Charles and Charlene **BAKER** et al., Plaintiffs-Appellees,

v.

**F & F INVESTMENT COMPANY** et al., Defendants,

Federal Housing Administration et al., Defendants-Appellants.

No. 72-2036.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 25, 1973.

Decided Dec. 6, 1973.

As Modified Dec. 21, 1973.

13. The quotation is from Woods v. Stone, 333 U.S. 472, 474, 68 S.Ct. 624, 625, 92 L.Ed. 815.

James R. Thompson, U. S Atty., William T. Huyck, Lawrence J. Cohen, Asst. U. S. Attys., Merrill Shepard, Chicago, Ill., for defendants-appellants.

Thomas P. Sullivan, Richard T. Franch, Thomas J. Boodell, Jr., Chicago, Ill., for plaintiffs-appellees.

Before CUMMINGS and STEVENS, Circuit Judges, and CAMPBELL, Senior District Judge.*

CUMMINGS, Circuit Judge.

In their complaint, the Negro plaintiffs alleged that they were charged excessive and discriminatory prices for their homes. Their suit was based on asserted violations of the Fifth, Thirteenth and Fourteenth Amendments and the Civil Rights Acts (42 U.S.C. §§ 1981, 1982, 1983 and 1985(3)). In view of District of Columbia v. Carter, 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613, plaintiffs no longer rely on the Fourteenth Amendment or 42 U.S.C. § 1983. Jurisdiction was predicated on 28 U.S.C. § 1343(4). The pertinent provisions are reproduced in the Appendix hereto. The original defendants were real estate sellers, their assignees, and savings and loan associations.

According to the complaint, the defendant-sellers were real estate speculators who purchased residences from white owners through "block busting" in areas near black neighborhoods. They then resold the properties to plaintiffs under installment sale contracts at excessive prices. The defendant savings and loan associations allegedly made loans to the sellers based on false and excessive appraisals.

The district court held that a cause of action had been stated under Section 1 of the Civil Rights Act of 1866 (42 U.S. C. § 1982) and under the federal and Illinois antitrust laws. Contract Buyers League v. F & F Investment, Inc., 300 F.Supp. 210 (N.D.Ill.1969). This decision occurred after the United States filed an *amicus* brief agreeing with plaintiffs' construction of the 1866 statute.

On August 11, 1970, the plaintiffs added Count 7 to their complaint, making a federal official and certain federal agencies parties defendant. They were the Secretary of the Department of Housing and Urban Development (HUD), the Federal Housing Administration (FHA), the Veterans Administration (VA), the Federal Savings and Loan Insurance Corporation (FSLIC), and the Federal Home Loan Bank Board, hereinafter sometimes termed the federal defendants. A month later the VA Administrator was added as a defendant. The district court granted the Federal Home Loan Bank Board's motion to dismiss it as a defendant on the ground that Congress had limited its consent to suits against that Board to federal savings and loan associations and directors and officers thereof. 12 U.S.C. § 1464(d)(1). However, the court refused to dismiss the remaining five federal defendants from the suit. We granted leave to appeal from the interlocutory order denying their motions to dismiss.

Count 7 charged that the former Secretary of HUD had responsibility for implementing the home mortgage insurance program administered by the FHA. Until 1967 that agency is said to have supported racially discriminatory market conditions in Chicago through the administration of its home mortgage in-

---

* Senior District Judge William J. Campbell of the Northern District of Illinois is sitting by designation.

surance programs, thus depriving plaintiffs of an equal opportunity to purchase homes. Since the FHA eliminated the availability of mortgage financing to Negroes in Chicago, plaintiffs allegedly had to purchase homes in segregated areas from real estate speculators and block busters under installment contracts at exorbitant prices.

The VA assertedly followed the same discriminatory policies practiced by the FHA and enabled defendant-sellers similarly to extract excessive prices from plaintiffs.

The FSLIC is described as the successor-in-interest to several defunct defendant-lender savings and loan associations. The complaint predicated the liability of the FSLIC on the illegal activities of those defendant-lenders and on the FSLIC's status as the mortgagee or title holder of properties sold to plaintiffs by defendant-sellers.

Plaintiffs charged that the actions of the federal defendants willfully and wrongfully deprived them of their constitutional rights in violation of 42 U.S. C. §§ 1981 and 1982 and the Fifth and Thirteenth Amendments. Plaintiffs sought actual and consequential damages and punitive damages, as well as reasonable attorneys' fees and costs. They also sought a declaration that the mortgages of the defendant-lenders and the FSLIC are void and unenforceable.

In its unreported opinion, the district court held that §§ 1981 and 1982 of the Civil Rights Acts were founded on the Thirteenth Amendment and applied to acts committed under color of federal law since they prohibit racial discrimination by all persons. The court held that the sue and be sued clauses contained in the enabling legislation governing the defendant agencies constituted a waiver of immunity to suit under the Civil Rights Acts. The court noted that the two individual federal defendants were only "named in their official capacity to meet the requirements set forth in the statutes to properly sue the F.H.A. and the V.A., respectively," with personal liability not being asserted against them.

The FSLIC was held to be a proper defendant because if the defendant savings and loan associations discriminated, the FSLIC would be liable as a successor-in-interest to their liabilities.

Applying our opinion in Baker v. F & F Investment, 420 F.2d 1191 (7th Cir. 1970), certiorari denied, 400 U.S. 821, 91 S.Ct. 40, 27 L.Ed.2d 49, the district court held that the five-year Illinois catchall statute of limitations applies. Although the Government argued that there was no continuing contractual relationship between the plaintiffs and the federal defendants, so that the statute of limitations had run as to them, the court rejected their argument as follows:

"The plaintiffs are alleging that the federal defendants have discriminated against them by establishing policies which were discriminatory in nature and were in effect throughout the period in question. If these defendants did initiate discriminatory policies, they not only affected the plaintiffs when they first purchased their homes, but also during this entire period when they might have wanted to refinance their homes. Therefore, just as there is a continuing relationship which allows the plaintiffs to maintain this action against the defendant-sellers and lenders, there is the same type of continuing relationship between the plaintiffs and the federal defendants, so that the statute of limitations would not serve as a bar to this action."

We affirm, except as to the FSLIC. As to the FSLIC, we affirm in part and reverse in part.

*Governmental Liability for Violations of Civil Rights Acts*

Blinding itself to landmark decisions of the Supreme Court, the Government urges that neither it nor its instrumentalities are subject to suits for damages under 42 U.S.C. §§ 1981 and 1982 for violations of the Fifth and

Thirteenth Amendments. We cannot turn back the clock to accept such a position.

As far back as 1948 it was decided that federal action is covered by 42 U.S.C. § 1982. Hurd v. Hodge, 334 U.S. 24, 68 S.Ct. 847, 92 L.Ed. 1187. That case held that a Negro citizen denied the opportunity to purchase the home of his choice solely because of his race and color suffered the kind of injury that Section 1 of the 1866 Civil Rights Act (42 U.S.C. § 1982) was designed to prevent. It was held a violation of that Section for an arm of the federal government, a district court, to assist in the enforcement of restrictive covenants. *Hurd* emphasized that Section 1982 was "directed * * * [at] governmental action." 334 U.S. at 31, 68 S.Ct. 847.

In Jones v. Mayer Company, 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189, a suit for damages and other relief, the breadth of Section 1982 was reemphasized and applied to purely private discrimination. In a sweeping holding, the Court held that Section 1982 prohibits "*all* discrimination against Negroes in the sale or rental of property—discrimination by private owners as well as discrimination by public authorities." 392 U.S. at 421, 88 S.Ct. at 2194. Eighteen months thereafter, in Sullivan v. Little Hunting Park, Inc., 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386, damages were expressly held to be recoverable under Section 1982. Then last Term in District of Columbia v. Carter, 409 U.S. 418, 422, 93 S.Ct. 602, 34 L.Ed.2d 613, the Court unanimously reiterated that like the Thirteenth Amendment upon which it was based, Section 1982 is an absolute bar to all racial discrimination in the sale or renting of property, "private as well as public, federal as well as state." Justice Brennan's opinion for the Court then stated:

> "the same considerations that led Congress to extend the prohibitions of § 1982 to the Federal Government apply with equal force to the District [of Columbia], which is a mere instrumentality of that Government."

In the face of such settled judicial construction of Section 1982, we must reject the Government's argument that it and its instrumentalities are subject only to equitable relief and are not liable for damages under Section 1982. The Section applies to the Government and it provides for damages. If the Government is not liable for damages, it is not because of any limitations inherent in Section 1982 but because of a general doctrine of sovereign immunity, a possibility to which we turn in the next part of the opinion.

The same rule applies to Section 16 of the 1870 Civil Rights Act (42 U.S.C. § 1981), for, as explained in Tillman v. Wheaton-Haven Recreation Association, Inc., 410 U.S. 431, 439–440, 93 S.Ct. 1090, 35 L.Ed.2d 403, it is based on the Thirteenth Amendment as well as the Fourteenth. Indeed, both present Sections 1981 and 1982 were originally part of Section 1 of the 1866 Act, but were broken into two Sections in the 1870 re-enactment. See Hurd v. Hodge, 334 U.S. at 30–31, n. 7, 68 S.Ct. 847. Thus they are not to be construed differently. *Tillman, supra,* at 440, 93 S.Ct. 1090.

*Suability of Defendant Federal Agencies*

The Government next urges that the defendant federal agencies are not amenable to suit in view of sovereign immunity. However, with respect to each of these agencies, consent of the Government to suit is found in the applicable sue and be sued provisions. See 12 U.S.C. § 1702 as to the FHA, 38 U.S.C. § 1820 as to the VA, and 12 U.S.C. § 1725(c) as to the FSLIC. The Government advances the theory that despite such clauses the federal defendants are not liable because the doctrine of apparent authority does not apply to their agents. The cases relied on by the Government to support this theory have no relationship to tort suits. For example, Reconstruction Finance Corp. v. Martin Dennis Co., 195 F.2d 698 (3d Cir. 1952), is typical of cases holding that a governmental agency is not estopped when an agent purports to waive its rights. Fed-

eral Crop Insurance Corp. v. Merrill, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10, announces the related principle of government contract law that the Government is not bound on a contract signed by an agent without actual authority to do so.

■ We have no quarrel with these cases; we simply find them irrelevant. The Government's attempt to extract from them a principle that government corporations are liable only for the authorized torts of their agents is untenable. If the Government means that the agencies are not liable for the torts of lower level officials unless their conduct is authorized by policy-making officials, it is a sufficient answer to note that Count 7 alleges that the agents of these federal instrumentalities were acting in accordance with agency policy rather than contrary thereto. If the Government's theory is based on the view that no government agent, however high, is authorized to commit illegal acts, it is even weaker. Such a theory would mean that government instrumentalities, which can act only through their agents, would never be liable in tort. Yet "It is well settled that the authority to sue and be sued contained in the charter of a government corporation includes suits in tort. [citing cases]." B. C. Morton International Corp. v. Federal Deposit Insurance Corp., 305 F.2d 692, 694–695, n. 2 (1st Cir. 1962).

■ We conclude that even if the conduct were authorized neither by law nor by high officials, these instrumentalities cannot escape liability under the sue and be sued clauses. Thus in Keifer & Keifer v. Reconstruction Finance Corp., 306 U.S. 381, 59 S.Ct. 516, 83 L.Ed. 784, the defendant had not authorized its agents to damage plaintiff's livestock and was nonetheless held suable for damages in tort. A similar suit was allowed in Gulf Oil Corp. v. Panama Canal Co., 407 F.2d 24 (5th Cir. 1969), though no one had authorized defendant's pilot to damage plaintiff's ship. In Powelton Civic Home Owners Association v. Department of Housing and Urban Development, 284 F.Supp. 809, 834 (E.D.Pa.1968), HUD allegedly denied plaintiffs' procedural relief in violation of the Constitution. The Department was nonetheless held suable because "The Housing Act explicitly waives the sovereign immunity defense and consents to suit." We approved Powelton in Gautreaux v. Romney, 448 F.2d 731 (7th Cir. 1971), where we held that sovereign immunity does not bar a suit which is challenging alleged unauthorized unconstitutional conduct by a federal officer.

■ The Government argues that Powelton and Gautreaux are inapt because those plaintiffs did not seek damages. But damages were sought in Keifer & Keifer and in Gulf Oil, supra Furthermore, the Supreme Court's opinions make clear that sue and be sued clauses do not make distinctions between different kinds of relief. "[T]he words 'sue and be sued' normally embrace all civil process incident to the commencement or continuance of legal proceedings * * *." Reconstruction Finance Corp. v. Menihan Corp., 312 U.S. 81, 85, 61 S. Ct. 485, 487, 85 L.Ed. 595; FHA v. Burr, 309 U.S. 242, 245, 60 S.Ct. 488, 84 L.Ed. 724. As pointed out in Keifer & Keifer, supra, if Congress had chosen to restrict its consent to suits, it would have done so. 306 U.S. at 395, 59 S.Ct. 516. It follows that restrictions on the authority of a federal agency to be sued are not to be lightly implied. FHA v. Burr, 309 U.S. at 245, 60 S.Ct. 488.

### Exclusivity of Federal Tort Claims Act

■ The federal defendants offer an elaborate argument in support of their contention that the Federal Tort Claims Act (the FTCA; 28 U.S.C. §§ 1346(b) and 2671 et seq.) affords the only mode of suit against them for tortious conduct and supersedes 42 U.S.C. §§ 1981 and 1982 and the relevant sue and be sued provisions. As we understand the argument, it proceeds in four steps:

1. "The authority of any federal agency to sue and be sued" shall not be construed to authorize suits which could be brought under the Federal

Tort Claims Act. 28 U.S.C. § 2679(a).

2. The FTCA provides for district court jurisdiction over civil actions on claims against the United States, for money damages, for injury caused by the negligent or wrongful act or omission of any federal employee "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b).

3. This is such a suit because plaintiffs could have alleged the state tort of interference with contract rights.

4. Had they done so, the suit would be cognizable under the FTCA, and recovery would be barred by 28 U.S.C. § 2680(h).

This argument is inherently suspect, because the purpose of the FTCA was to expand government liability, not decrease it. The fatal flaws lie in the third and fourth steps.

■ Plaintiffs' claim against these defendants is based on federal law. The complaint does not allege, and the federal defendants do not concede, that the United States, if a private person, would be liable to plaintiffs in accordance with Illinois law. Since the complaint is based exclusively on federal law, the FTCA is inapplicable. See Feres v. United States, 340 U.S. 135, 146, 71 S.Ct. 153, 95 L.Ed. 152. As Judge Tuttle pointed out in United States v. Smith, 324 F.2d 622, 625 (5th Cir. 1963), the attempt to vindicate a right dependent, as here, upon federal statutes is not within the ambit of the FTCA.

■ There is no known parallel state liability "under [the] circumstances" (28 U.S.C. § 1346(b)), for the Government has cited no Illinois law comparable to §§ 1981 and 1982. Plaintiffs are not obligated to forego the broad protections of the federal Civil Rights Acts, specifically intended to provide remedies for racial discrimination, and follow the federal defendants' suggestion of suing instead under a racially neutral state tort law hemmed in with privileges and other limitations. The Supreme Court dealt with a similar situation in Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152, where a soldier had been injured by the malpractice of an Army surgeon. Justice Jackson pointed out:

"It is true that if we consider relevant only a part of the circumstances and ignore the status of both the wronged and the wrongdoer in these cases we find analogous private liability. In the usual civilian doctor and patient relationship, there is of course a liability for malpractice. * * * But the liability assumed by the Government here is that created by 'all the circumstances,' not that which a few of the circumstances might create." 340 U.S. at 142, 71 S.Ct. at 157.

The Court concluded that malpractice by an Army surgeon while treating a soldier was governed by federal law and that suit therefore did not lie under the FTCA. Similarly here, the federal defendants cannot recast this suit in FTCA terms by demanding that plaintiffs ignore the circumstance that they were allegedly discriminated against because of their race.

We turn now to the fourth step of the federal defendants' argument. They have fundamentally misread 28 U.S.C. § 2680(h), which provides: "The provisions of this chapter and section 1346(b) of this title [together, the FTCA] shall not apply to * * * (h) Any claim arising out of * * * interference with contract rights." It is contended that this means that no suit which could have been pleaded as interference with contract rights may be brought against the Government, citing Dupree v. United States, 264 F.2d 140 (3d Cir. 1958). But *Dupree* was a suit against the United States, and there was no relevant sue and be sued clause. There having been no consent to suit before the FTCA, and the FTCA being inapplicable, there was still no consent to

suit, and the suit was dismissed. The United States is not named as a defendant in this case. We have held *supra* that before the 1946 enactment of the FTCA, the federal defendants were suable in tort for damages under their sue and be sued clauses. Were we to accept their contention that this is really a suit for interference with contract rights, then the FTCA would "not apply" and the sue and be sued clauses would not be limited by § 2679(a), and the pre-FTCA consent to suit would not be affected. It follows that whether this suit is properly based on the Civil Rights Acts, as we conclude, or on state tort law as the federal defendants contend, it is not barred by the FTCA.

*The Illinois Statutes of Limitations*

■ The FHA, VA, and their officers agree that the Illinois five-year statute of limitations applies to them. Ill.Rev.Stats.1971, ch. 83, § 16. However, these defendants contend that "the blow was struck" when plaintiffs were denied federal mortgage insurance, or at the latest when they signed their respective installment contracts, so that the statute of limitations ran from that date. The district court relied on our earlier opinion, Baker v. F & F Investment, 420 F.2d 1191, 1200 (7th Cir. 1970), certiorari denied, 400 U.S. 821, 91 S.Ct. 40, 27 L.Ed.2d 49 (*Baker I*), in which we held that as against the private defendants, the statute of limitations did not begin to run until the respective installment contracts were completely performed. We are urged to distinguish *Baker I* on the ground that no continuing contractual relationship existed between plaintiffs and the federal defendants. But the touchstone of *Baker I* was "a prolonged and continuing invasion of the rights of the purchasers." 420 F.2d at 1200. The three key facts in *Baker I* are also alleged to be present here: The defendants' wrongful conduct continued after the installment contracts were signed; injury to plaintiffs continued to accrue after the installment contracts were signed; and, had defendants

at any time ceased their wrongful conduct, further injury to plaintiffs could have been avoided. The private defendants could have avoided further injury to plaintiffs by offering to rescind the contracts and negotiate fairer terms. Judge McGarr concluded that the federal defendants could have avoided further injury to plaintiffs because if they had offered mortgage insurance at any time during the life of the installment contracts, plaintiffs could have refinanced the purchase of their homes, possibly reducing further finance charges and ending exposure to other unfavorable terms of the installment contracts. If these claims are proven, it would follow that a new injury was inflicted on plaintiffs each day until the federal defendants abandoned their discriminatory policies or the respective installment contracts were completely performed, whichever occurred first. Consequently, a new limitations period began to run each day as to that day's damage. Plaintiffs allege that the discriminatory policies continued at least through 1967, and the federal defendants seem to admit that they were in effect until 1969 (Br. p. 32; cf. Br. p. 31). The complaint against the FHA, VA and their officers, filed August 11, 1970, is thus well within the limitations period. Of course, plaintiffs cannot recover against them any items of damage which accrued before August 11, 1965. And they must prove that continuation of the discrimination after that date actually harmed them. It may be, for example, that a non-discriminatory mortgage at the high interest rates of the late sixties would have cost plaintiffs more than their discriminatory installment contracts entered into in the fifties.

Our prior decision most relied upon by the Government is Baldwin v. Loew's Inc., 312 F.2d 387 (7th Cir. 1963). In that case, as here, defendants' conspiracy forced plaintiffs to enter into a disadvantageous contract with a third party. Plaintiff Baldwin first signed a five-year lease with a third party in 1940, and thereafter there was no con-

tractual relationship between Baldwin and the defendants. In 1945 the lease was renewed because the continuing conspiracy still made it impossible for Baldwin to operate the business profitably himself. In the renewed lease, Baldwin gave his lessee a five-year tenancy and three five-year options, committing himself for twenty years. He sued defendants in 1953. We held the suit barred because the "statute of limitations begins to run at the time that injury is inflicted. In this case that date was when the lease was executed between plaintiffs and the lessee in 1945." 312 F.2d at 390. If a contractual relationship were necessary to make a continuing wrong for limitations purposes, the statute would have commenced running in 1940. Instead, it ran from the last date on which, but for the continuing conspiracy, plaintiff could have refused to sign the lease and avoided further injury. Once he was committed for twenty years, termination of the conspiracy would not have helped him, so that the limitations period commenced running in 1945. *Baldwin* is therefore entirely consistent with our resolution of this case. See Judge Will's careful discussion of *Baldwin* in Contract Buyers League v. F & F Investment, 300 F.Supp. 210, 219–220 (N.D.Ill.1969) affirmed in *Baker I*.

As to the FSLIC, the relevant statute of limitations is Ill.Rev.Stats.1971, ch. 32, § 906. That statute provides that liquidators of savings and loan associations shall fix a time for persons to present their claims and that claims filed thereafter shall be barred. Plaintiffs presumably did not file their claims with the liquidators within the time fixed. The case is therefore much like Pufahl v. Estate of Parks, 299 U.S. 217, 57 S.Ct. 151, 81 L.Ed. 133. That was a suit by the Comptroller of the Currency against the estate of a stockholder of a national bank to enforce a federal statutory liability. An Illinois statute barred all claims against estates not filed within one year from the issuance of letters testamentary. That statute was applied to bar the Comptroller's

claim, even though the claim did not come into existence until after the year had passed, and the limitations period which would have applied to a parallel claim against a living stockholder therefore could not possibly have elapsed.

 Plaintiffs argue that the five-year catchall statute of limitations was incorporated into civil rights actions in Illinois in *Baker I*, and that it must be applied to all such actions. *Baker I* held only that if no specific facts of a civil rights suit bring it within some other statute of limitations, then Ill.Rev. Stats.1971, ch. 83, § 16, applies. But all the relevant elements of each lawsuit must be considered before characterizing it for statute of limitations purposes. Thus in Jones v. Jones, 410 F.2d 365 (7th Cir. 1969), we applied the two-year limitations period of Ill.Rev.Stats.1971, ch. 83, § 15, to an action under 42 U.S.C. § 1983. Although the complaint in that case was brought under the Civil Rights Act and charged that defendants acted under color of law, the underlying wrong alleged was in the nature of malicious prosecution, and therefore the malicious prosecution statute of limitations was applied. Similarly, the fact that this civil rights claim is brought against a defunct savings and loan association brings it within the scope of § 906.

 In applying state statutes of limitations to federal claims, we are admonished not to discriminate in favor of federal claims or to "limit the defences to which the defendant would otherwise be entitled[.]" Campbell v. Haverhill, 155 U.S. 610, 616, 15 S.Ct. 217, 219, 39 L.Ed. 280. "[T]here is no reason to reject the characterization that state law would impose unless that characterization is unreasonable or otherwise inconsistent with national * * * policy." Automobile Workers v. Hoosier Cardinal Corp., 383 U.S. 696, 706, 86 S.Ct. 1107, 1113, 16 L.Ed.2d 192. Although the Illinois Supreme Court has evidently not yet construed § 906, it is apparent that it would apply § 906 to this case. The patent purpose of § 906 is to complete

liquidation proceedings promptly so that depositors can be paid, and this purpose would be thwarted by any dilatory money claims. This is a legitimate state purpose and is not unreasonable or inconsistent with national policy. The case is therefore, different from McAllister v. Magnolia Petroleum Co., 357 U.S. 221, 78 S.Ct. 1201, 2 L.Ed.2d 1272 and Donovan v. Reinbold, 433 F.2d 738 (9th Cir. 1971), where courts refused to apply short statutes of limitations to federal claims. Accordingly, the claims for money damages against the FSLIC should be dismissed on remand unless plaintiffs make a prompt offer to prove compliance with § 906. Newberg v. Federal Savings and Loan Insurance Corp., 317 F.Supp. 1104, 1107 (N.D.Ill. 1970)

 However the equitable claims against the FSLIC should not be dismissed. The FSLIC is said to hold mortgages on some of plaintiffs' homes, and where defendant-seller-mortgagors have defaulted, to own homes subject to plaintiffs' installment contracts. The complaint asks the court to reform or void these contracts and mortgages, and we are not bound to apply state statutes of limitations to federal equitable claims. Holmberg v. Armbrecht, 327 U. S. 392, 66 S.Ct. 582, 90 L.Ed. 743. Furthermore, if the FSLIC ever attempted to foreclose the mortgages at issue and repossess plaintiffs' homes under the installment contracts, plaintiffs could attack the validity of the mortgages and installment contracts in defense or by counterclaim. Ill.Rev.Stats.1971, ch. 83, § 18. In the interests of judicial economy those claims should be resolved in this proceeding.

### FSLIC's Liability as a Successor to Savings and Loan Associations

 Finally the FSLIC argues that it was a purchaser of mortgages of the four savings and loan associations in-

volved and under Illinois law was therefore not subject to latent equities in favor of plaintiffs. However, plaintiffs deny that the FSLIC was a mere purchaser and the district court held that it was named as a defendant "because of its role as conservator of the liquidated savings and loan associations who discriminated in making mortgages to the plaintiffs." The court concluded that the FSLIC would be liable as successor-in-interest to the liabilities of the defunct lenders if a trial on the merits showed that those lenders had discriminated. That question cannot be decided on the present record, for an unresolved question of fact lies at the threshold of the dispute between the parties. Exactly how did the FSLIC come to own the assets of the defunct savings and loan associations? It could have proceeded as a liquidator under 12 U.S.C. § 1729(d), with responsibility to "settle, compromise or release claims * * * against the insured institutions." Or it could have purchased the assets under 12 U.S.C. § 1729(f). If the latter, it may or may not have voluntarily assumed any liabilities. Taking the allegations of Count 7 as true, as we must on motions to dismiss, it appears that the FSLIC stands in the shoes of the defunct institutions with respect to plaintiffs' claims against their assets. As indicated above, the FSLIC is said to hold mortgages on some of plaintffs' homes, and to own other homes subject to plaintiffs' installment contracts. Since the complaint asks the court to reform or void these contracts and mortgages, the FSLIC may be a necessary party for the giving of complete relief. For all of these reasons, we are unwilling to dismiss the complaint against it at this stage.

---

Except with respect to the FSLIC, the order of the district court denying the motions of the five federal defendants to dismiss is affirmed, with costs to plaintiffs.

## APPENDIX

The Thirteenth Amendment provides:

"*Section 1.* Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction.

"*Section 2.* Congress shall have power *to enforce this article by* appropriate legislation."

Section 16 of the Civil Rights Act of 1870 provides:

"All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." (42 U.S.C. § 1981).

Section 1 of the Civil Rights Act of 1866 provides:

"All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." (42 U.S.C. § 1982).

Section 1343(4) of the Judicial Code provides:

"The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

\* \* \* \* \* \*

"(4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote." (28 U.S.C. § 1343(4)).