**Harold MAYBANKS**

v.

**Norman R. INGRAHAM, M. D., Commissioner, Department of Public Health, et al.**

**Civ. A. No. 71–3058.**

United States District Court, E. D. Pennsylvania.

June 19, 1974.

**914**

Scudder G. Stevens, Peck, Young & Van Sant, Edwin D. Wolf, Lawyers' Committee for Civil Rights under Law, Philadelphia, Pa., for plaintiff.

Martin Weinberg, City Sol., Stephen T. Saltz, Asst. City Sol., for defendants.

## OPINION

JOSEPH S. LORD, III, Chief Judge.

This is an action against the City of Philadelphia and certain individual defendants based on plaintiff's dismissal from his employment in the Department of Public Health for allegedly racially discriminatory reasons. Plaintiff brings the action under the Thirteenth and Fourteenth Amendments to the Constitution and the Civil Rights Acts of 1866 and 1871, 42 U.S.C. §§ 1981 and 1983. Jurisdiction is alleged under 28 U.S.C. § 1343(3) and (4) and 28 U.S.C. § 1331.

On October 4, 1973 we entered an order dismissing the action as to the City of Philadelphia, under §§ 1981 and 1983, based on the conclusion that the City is not a "person" within the meaning of § 1983. We have before us now a motion to reconsider that order as well as a motion to file an amended complaint. The purpose of the amended complaint appears to be to clarify that a cause of action is alleged directly upon the Thirteenth and Fourteenth Amendments to the Constitution.

There remains no doubt that no cause of action exists against the City under § 1983. City of Kenosha v. Bruno, 412 U.S. 507, 93 S.Ct. 2222, 37 L. Ed.2d 109 (1973). However, the posture of the City as defendant under § 1981 and as sued directly for a violation of plaintiff's constitutional rights is different.

### I

The Supreme Court has made clear that an action to redress the deprivation of a constitutional right may be viable regardless of the existence of an applicable civil rights statute. Thus, in Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the Court held that an action for damages lay against federal officers alleged to have violated plaintiff's Fourth Amendment rights against unreasonable searches and seizures, and that federal jurisdiction existed under 28 U.S.C. § 1331, where

there was more than $10,000 in controversy.

Even more relevant to the instant case is City of Kenosha v. Bruno, *supra*. In that case, involving a constitutional challenge to the procedures set up under the Wisconsin statute governing liquor license renewals, the Court remanded the case to the district court for consideration of whether § 1331 jurisdiction existed against the cities of Kenosha and Racine. As to Racine, the Court noted that the defendant had put plaintiffs to their proof as to the amount in controversy and that "[s]ince the cases were submitted and decided on cross-motions for summary judgment and stipulations of fact, and no stipulation as to the amount in controversy was filed, we cannot say on this state of the record whether or not jurisdiction over the complaints was affirmatively established." 412 U.S. at 514, 93 S.Ct. at 2227. As far as the City of Kenosha was concerned, although there originally had been a stipulation as to the amount in controversy, this was before the amended complaint was filed which for the first time challenged the constitutionality of the Wisconsin licensing scheme. After that, no answer was filed and no stipulation agreed to. The Court therefore remanded for consideration by the district court of the availability of § 1331 jurisdiction "in view of the state of the record below." 412 U.S. at 514, 93 S.Ct. at 2227. Without at any time clearly stating so, this discussion suggests that the Court recognized that if there were $10,000 in controversy, then there would be § 1331 jurisdiction.[1] To clarify this point, Justice Brennan, in his brief concurring opinion joined by Justice Marshall, stressed his agreement

"with the Court's conclusion that existence of the requisite amount in controversy is not, on this record, clearly established. If appellees can prove their allegation that at least $10,000 is in controversy, then § 1331 jurisdiction is available, Bell v. Hood, 327 U. S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946); cf. Bivens v. Six Fed. Narcotics Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), and they are clearly entitled to relief." 412 U. S. at 516, 93 S.Ct. at 2228.

This Circuit has recognized these principles in its recent opinion of Skehan v. Board of Trustees of Bloomsburg State College, 501 F.2d 31 (C.A. 3, 1974). That case, like the instant one, involved dismissal from employment, although the unconstitutional action alleged in that case concerned interference with First Amendment freedoms, as well as failure to comply with the requirements of due process. In discussing jurisdiction, (at 44), the court found a jurisdictional basis under § 1331:

"Skehan asserts jurisdiction under 28 U.S.C. § 1331 and under 28 U.S.C. § 1343(3), (4) and the Civil Rights Acts. The jurisdictional amount requisite to support jurisdiction under § 1331 is pleaded, and the claim for recovery in excess of $10,000 clearly is not frivolous. Jurisdiction over the individual defendants is clear both under § 1331 and under § 1343 and 42 U.S.C. § 1983. Because the requisite jurisdictional amount for § 1331 is pleaded, the fact that the College is not a 'person' within the meaning of 42 U.S.C. § 1983 is not significant. Thus we have no occasion in this case to determine whether, in view of the Commonwealth's abandonment of state sovereign immunity with respect to subgovernmental units in the *Ayala* case, those units may be sued in a federal court where, because the claim is less than $10,000, jurisdiction must be predicated on 28 U.S.C. § 1343(3), (4). * * * There is § 1331 jurisdiction to award relief against the College if under Pennsylvania law it

1. *See* United Farmworkers of Florida Housing Project, Inc. v. City of Delray Beach, Florida, 493 F.2d 799, 801–802 (C.A. 5, 1974) which discusses this aspect of *Kenosha*.

is not an agency of the Commonwealth covered by the Commonwealth's immunity."

Under the Third Circuit's reading of Ayala v. Philadelphia Board of Public Education, 453 Pa. 584, 305 A. 2d 877 (1973), Pennsylvania has abolished governmental immunity in general (Skehan, at 41).[2] Therefore, since the City of Philadelphia is not immune from suit, and since there is an allegation that the amount in controversy is more than $10,000, we must reverse our determination that the City of Philadelphia be dismissed from this suit at this time. If in the future the amount in controversy is put into question, we may then reconsider whether jurisdiction exists under § 1331.

## II

The applicability of § 1981 to municipalities has been sparsely dealt with by the courts. One which has considered the issue suggested that given the exclusion of municipal liability from the ambit of § 1983, explicit in its legislative history as interpreted by the Supreme Court, "an interpretation of section 1981 which authorizes damage actions against states and municipalities deprives section 1983 of its essential significance." Bennett v. Gravelle, 323 F.Supp. 203, 215 (D.Md.1971). See also Arunga v. Weldon, 469 F.2d 675 (C.A. 9, 1972). We considered this question in United States ex rel. Washington v. Chester County Police Department, 294 F.Supp.

1157 and 300 F.Supp. 1279 (E.D.Pa. 1969), but we held only that plaintiffs should be allowed to proceed in forma pauperis in an action under § 1981 because "[t]he law under that section is not as clear, crystalized and well-settled as is the judicial gloss on § 1983." 294 F.Supp. at 1159. However, we never definitively decided whether the City or the police department could be sued under § 1981.[3]

Now the issue is again before us. We have received no assistance from the defendant City by way of a memorandum in opposition to plaintiff's motion for reconsideration, which in any way deals with the issue of the City's liability under § 1981. However, having read plaintiff's memorandum and after considering all of the relevant case law, we conclude that the City of Philadelphia is subject to § 1981 liability.

The defendant City relies on its immunity to suit under § 1983 to answer plaintiff's allegation of § 1981 liability. This is no answer. In the first place, the word "person" which in § 1983 has been held conclusively not to apply to municipalities, appears in § 1981 only to describe those who are protected by the statute, not those who are proscribed from its violation. In the second place, the scope and application of § 1981 is vastly different from that of § 1983.

One essential difference is that § 1981, like § 1982, is based on and intended to enforce the Thirteenth Amendment, and applies, therefore, to

---

2. Ayala on its facts involved common law tort liability, although the opinion lends itself to a broader interpretation, as the Third Circuit has concluded. In any event, Pennsylvania's abolition of such immunity would appear to be irrelevant in this particular case. The Eleventh Amendment does not apply to municipal corporations, cf. Moor v. County of Alameda, 411 U.S. 693, 717–718, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973) (reiterating that political subdivisions of a state are citizens of that state for purposes of federal diversity jurisdiction); Markham v. City of Newport News, 292 F. 2d 711, 716 (C.A. 4, 1961) ("the Eleventh Amendment does not extend to cities"), and such political units have long been brought

into federal courts to redress constitutional deprivations, witness Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954).

3. Judge Higginbotham, to whom this case was transferred, concluded that our second opinion at 300 F.Supp. 1279 impliedly decided that the City of Chester and the police department were subject to § 1981 liability. United States ex rel. Washington v. Chester County Police Department, C.A. No. 68–2300 (E.D.Pa., filed Sept. 8, 1971). However, since this case was eventually dismissed by agreement, and since we never fully explored the issue of municipal liability under § 1981, we do not consider that Washington is dispositive of the issue.

actions against private persons as well as those acting under color of law.[4] Section 1983, on the other hand, enacted to implement the Fourteenth Amendment and applying, therefore, only to cases where state action is involved, is of more limited application. This was emphasized by the Supreme Court in District of Columbia v. Carter, 409 U.S. 418, 424–425, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973), which held that the District of Columbia was not a "State or Territory" for purposes of § 1983. The Court took care to distinguish the application of § 1982 to the District, which had been recognized in Hurd v. Hodge, 334 U.S. 24, 68 S.Ct. 847, 92 L.Ed. 1187 (1948). Emphasizing the absolute nature of the Thirteenth Amendment as compared to the Fourteenth, the Court said, 409 U.S. at 422, 93 S.Ct. at 605:

> "* * * like the Amendment upon which it is based, § 1982 is not a 'mere prohibition of State laws establishing or upholding' racial discrimination in the sale or rental of property but, rather, an 'absolute' bar to *all* such discrimination, private as well as public, federal as well as state. Cf. Jones v. Alfred H. Mayer Co., supra, 392 U.S., at 413, 437 * * *. *With this in mind, it would be anomalous indeed if Congress chose to carve out the District of Columbia as the sole exception to an act of otherwise universal application."* [Emphasis added.]

While this language may have been dictum, the Court appeared to recognize a universal application of § 1982 (and therefore similarly of § 1981), as contemplated by the Congress which enacted it, which would apply to municipalities,[5] barring any defenses or immunities which they may have.[6] Surely this is sensible, for if purely private citizens are subject to liability under §§ 1981 and 1982, it would seem anomalous to exempt government, the upholder of law, from similar responsibility for racial discrimination.

Thus, in the wake of *Carter,* several courts have held that § 1981 supports a cause of action against federal officers, in the absence of sovereign immunity problems. Penn v. Schlesinger, 490 F.2d 700 (C.A. 5, 1973); Baker v. F & F Investment Co., 489 F.2d 829 (C.A. 7, 1973); Ficklin v. Sabatini, 378 F.Supp. 19 (E.D.Pa., 1974).

Furthermore, the court in *Baker* recognized that such an action might be brought for damages as well as for injunctive relief:

> "In the face of such settled judicial construction of Section 1982, we must reject the Government's argument that it and its instrumentalities are subject only to equitable relief and are not liable for damages under Section 1982. The Section applies to the Government and it provides for damages. If the Government is not liable for

---

**4.** *See* Young v. International Telephone & Telegraph Co., 438 F.2d 757 (C.A. 3, 1971), holding that § 1981 applies to discrimination in private employment. Judge Gibbons discusses the history behind the enactment of what are today §§ 1981 and 1982. He explains that although § 1982 is derived from § 1 of the Civil Rights Act of 1866, § 1981 comes from the Act of May 31, 1870. However, that section tracked a provision of the 1866 Act, which was re-enacted "in order to insure that the prohibitions of the 1866 Act were supported by [the Fourteenth] Amendment as well as the Thirteenth." The 1874 codification acknowledges the 1866 Act for the derivation of what is now § 1982, but credits the 1870 Act for § 1981. Judge Gibbons notes that if anything, the 1870 provision was broader than that of 1866 and further cites Jones v. Alfred H. Mayer Co., 392

U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968) and Sullivan v. Little Hunting Park, 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969) to demonstrate that "common lineage of the two sections may still be relied upon." 438 F.2d at 759–760. *Accord* Baker v. F & F Investment Co., 489 F.2d 829, 833 (C.A. 7, 1973).

**5.** Since *Carter* involved the District of Columbia, it is unreasonable to assume the Court failed to consider states and their political subdivisions when it spoke of "universal application." States, however, may be protected by sovereign immunity.

**6.** As we have already discussed, *supra,* the City of Philadelphia has no Eleventh Amendment immunity, and even if it had, it has been abolished by *Ayala.*

damages, it is not because of any limitations inherent in Section 1982 but because of a general doctrine of sovereign immunity * * *.

"The same rule applies to * * * § 1981." 489 F.2d at 833.

The "settled judicial construction" includes the case of Sullivan v. Little Hunting Park, 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969) which answered affirmatively the question left open in Jones v. Alfred H. Mayer Co., 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968), as to whether damages could be awarded under § 1982: "The existence of a statutory right implies the existence of all necessary and appropriate remedies." 396 U.S. at 239, 90 S.Ct. at 405. An action for damages, therefore, exists under § 1981 as well. Young v. International Telephone & Telegraph Co., 438 F.2d 757, 760 (C.A. 3, 1971).

Consequently, we hold that plaintiff has stated a cause of action under § 1981 against the City of Philadelphia for all the relief requested, and we therefore have jurisdiction under 28 U. S.C. § 1343(3) and (4).

The City of Philadelphia is reinstated as a party defendant and we will grant plaintiff's motion to amend his complaint.