SEACOAST SANITATION LIMITED, INC., and Joint Enterprises, Inc., d/b/a Oceans Eleven, Inc., Plaintiffs,

v.

BROWARD COUNTY, FLORIDA and the Resource Recovery Board, Defendants.

No. 96–7175–CIV.

United States District Court, S.D. Florida.

Aug. 4, 2003.

Robert Smoley, Esq., Diaz, O'Naghten & Borgognoni, L.L.P., Miami, Counsel for Plaintiff.

Albert L. Frevola, Jr., Esq., Conrad & Scherer, Fort Lauderdale, Counsel for Resource Recovery Board.

Alan Gabriel, Esquire, Katz, Barron, Squitero & Faust, P.A., Ft. Lauderdale, Co-counsel for Resource Recovery Board.

Michael Moskowitz, Esq., Moskowitz, Mandell, et al, Ft. Lauderdale, Counsel for Broward County.

### ORDER

GONZALEZ, District Judge.

**THIS MATTER** has come before the Court upon the following motions: (1) the Motion for Partial Summary Judgment (DE # 577) of Plaintiffs Seacoast Sanitation Limited, Inc. ("Seacoast"), and Joint Enterprises, Inc., d/b/a Oceans Eleven, Inc. ("Oceans Eleven"), filed February 28, 2003; (2) the Motion for Summary Judgment (DE # 579) of Defendant Resource Recovery Board ("RRB"), filed February 28, 2003; and (3) the Motion for Summary Judgment (DE # 582) of Defendant Broward County, Florida (the "County"), filed March 3, 2003. For its consideration of this matter, the Court has the parties' pleadings, motions, statements of undisputed material facts, briefing, affidavits, discovery responses, exhibits, applicable law, and the record in this case.

For the reasons stated herein, the Court **ORDERS** and **ADJUDGES** as follows:

1. the Plaintiffs' Motion for Partial Summary Judgment is **DENIED**;

2. the RRB's Motion for Summary Judgment is **GRANTED**; and

3. the County's Motion for Summary Judgment is **GRANTED**.

## I. BACKGROUND [1]

Unless otherwise indicated, the following material facts are not in dispute.

### A. THE BROWARD SOLID WASTE DISPOSAL DISTRICT

Taking their cue from the Florida Legislature, as expressed in Fla. Stat. Ann. §§ 403.702 *et seq.*, on or about November 25, 1986, the County and various incorporated municipalities situated in the County (the "Contract Communities") entered into "An Interlocal Agreement with Broward County for Solid Waste Disposal Service" (the "Interlocal Agreement"). The parties' purpose in executing the Interlocal Agreement was to develop jointly a comprehensive, environmentally advanced, solid waste disposal and resource recovery system to process solid waste generated in their respective areas.

The County undertook its obligations in the Interlocal Agreement in two distinct capacities. On one hand, the County undertook obligations as the County itself. On the other hand, the County undertook obligations as the governmental representative of the unincorporated areas of the County. The unincorporated areas are those areas of the County not part of the territory of any incorporated municipality within the County.

Pursuant to the Interlocal Agreement, the County enacted Ordinance No. 87–3. Ordinance No. 87–3 established, among other things, the Broward Solid Waste Disposal District (the "District"), a special district authorized by Fla. Stat. § 125.01(5) and anticipated by the Interlocal Agreement. The District is comprised of the Contract Communities and the County acting as governmental representative of the unincorporated areas. Ordinance No. 87–3 also created the RRB, which is the representative, nine-member, governing body of the District. The RRB promulgates a Plan of Operations pursuant to which it administers the District.

The County agreed in the Interlocal Agreement to provide for the disposal of solid waste generated in the District by causing to be constructed, operated, and maintained, a resource recovery system. The resource recovery system to be constructed included two state of the art resource recovery facilities.

In August 1986, the County executed various agreements with a full service contractor to construct, equip, operate and maintain the facilities. The County financed the construction of the facilities by issuing bonds. The contractor owns and operates the facilities. The County pays the contractor service fees and service charges to process solid waste that is generated in the District and delivered by solid waste haulers to the facilities.

In the Interlocal Agreement, the Contract Communities and the County agreed to include in their contracts with solid waste haulers a provision requiring the hauler to deliver all solid waste generated in the relevant contract area to a designated resource recovery facility and to pay a per-ton tipping fee to the County on the solid waste so delivered. In addition, and directly at issue here, each of the Contract Communities, and the County acting on behalf of the unincorporated areas, agreed to pass (and did pass) a flow control ordinance requiring solid waste haulers to de-

---

**1.** This matter grew out of the matter addressed in the Court's Order reported as *Coastal Carting, Ltd. v. Broward County,* 75 F.Supp.2d 1350 (S.D.Fla.1999).

liver all solid waste generated in their respective areas to a designated facility. The tipping fees paid by solid waste haulers to the County on the solid waste they deliver to the facilities generally constitute the revenue stream the County uses to pay the service fees it owes the contractor that owns and operates the facilities.

## B. THE *COASTAL CARTING* DECISION AND ITS AFTERMATH

The County's flow control ordinance for the unincorporated areas is Ordinance No. 87–4. Ordinance No. 87–4 provides in relevant part that "the County on behalf of the unincorporated area of Broward County, Florida, hereby directs that all solid waste *generated within the unincorporated area of the county* be delivered to the resource recovery system transfer or disposal facility or facilities designated in the plan of operation under the Interlocal Agreement .... " Ordinance No. 87–4, § 3.02 (emphasis added).

The constitutionality, under the Commerce Clause of the United States Constitution, of the County's flow control ordinance was the subject of *Coastal Carting, Ltd. v. Broward County*, 75 F.Supp.2d 1350 (S.D.Fla.1999). There, citing, *inter alia, C & A Carbone, Inc. v. Town of Clarkstown*, 511 U.S. 383, 114 S.Ct. 1677, 128 L.Ed.2d 399 (1994), this Court found the County's flow control ordinance to be unconstitutional because the ordinance regulated the local solid waste disposal market and discriminated against out-of-state solid waste disposal service providers in favor of the District's resource recovery facilities. *See Coastal Carting*, 75 F.Supp.2d at 1356.

In response to the Court's *Coastal Carting* decision, the Contract Communities and the County amended the Interlocal Agreement, the RRB amended the Plan of Operations, and the County—again, as representative of the unincorporated areas—amended its flow control ordinance to permit haulers to deliver solid waste to out-of-state disposal facilities. On July 13, 1999, the County enacted Ordinance No.1999–42, which amended Ordinance No. 87–4. Ordinance No.1999–42 permits haulers to deliver unincorporated-area-generated solid waste to out-of-state facilities, so long as the haulers observe certain minimal reporting requirements.[2]

## C. PLAINTIFFS' COMPLAINT AND THE PARTIES' MOTIONS FOR SUMMARY JUDGMENT

### 1. THE PLAINTIFFS

Oceans Eleven, a Florida corporation with its principal place of business in Hollywood, Florida, is a generator of solid waste. Seacoast, a Florida corporation with its principal place of business in Hallandale, Florida, is a solid waste hauler that had a contract with the County from 1973 to 1993 to provide hauling services in one district of the County's unincorporated areas.[3]

---

**2.** The County amended its flow control ordinance again in 2001 in a manner not pertinent to the Court's ruling on the instant motions. For convenience, the Court will refer to the County's flow control ordinance, in both its past and present incarnations, simply as "Ordinance No. 87–4."

**3.** The parties dispute whether Seacoast's hauling contract spanned the years 1973 to 1993 or 1973 to 1991. The dispute is immaterial for purposes of ruling on the instant motions. The Court will assume for purposes of this Order only that Seacoast's hauling contract ran until 1993.

The Plaintiffs filed a motion to intervene in the *Coastal Carting* case in September 2000, and the Court granted that motion. All other claims directly at issue in, or growing out of, *Coastal Carting*, have since been resolved. Only the Plaintiffs' claims remain.

### 2. THE PLAINTIFFS' CLAIMS FOR RELIEF

The Plaintiffs' Complaint is presented in three counts. In count 1, the Plaintiffs allege that the County's Ordinance Nos. 87–3 and 87–4 (both as they were enacted and as they currently exist) violate the Commerce Clause of the United States Constitution. The Plaintiffs contend that they have sustained damages as a result of the allegedly unconstitutional ordinances because (1) solid waste generators pay more for solid waste disposal services, and (2) solid waste haulers pay higher tipping fees, and therefore earn less on their hauling contracts, than they would but for the regulatory effect of ordinances.

In count 2, the Plaintiffs allege that through the challenged ordinances the County has violated the Plaintiffs' substantive due process rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. The Plaintiffs claim to have a private property interest in potential "waste disposal contracts" and that the challenged ordinances diminish such a property interest. The Plaintiffs allege that, but for the challenged ordinances, they could enter into hauling contracts that would be more advantageous to themselves.

In count 3, the Plaintiffs re-allege the allegations in counts 1 and 2 and, based on the same allegations, advance a claim pursuant to 42 U.S.C. § 1983. The Plaintiffs

seek as remedies to the injuries claimed in all three counts, *inter alia*, damages and a judicial declaration that Ordinance Nos. 87–3 and 87–4, as enacted and as amended, are unconstitutional.

### 3. THE PLAINTIFF'S CLASS ACTION ALLEGATIONS

The Plaintiffs advance their claims as putative representatives of a class action pursuant to Fed.R.Civ.P. 23(b)(2) and (3). Oceans Eleven purports to represent the following class of claimants:

> all persons or entities who contracted with another person or entity for the collection and disposal of solid waste, which waste was delivered to a Broward County facility pursuant to Broward County ordinance Nos. 87–3 and 87–4, and regarding which class members were required, when they paid their hauler's bill, to pay all or part of the disposal fees established by Broward County pursuant to those ordinances (the "generators").

Second Amended Complaint, ¶ 6b.

Seacoast purports to represent a class of claimants comprised of "all persons or entities who have delivered waste to a Broward County facility, pursuant to Broward County ordinances Nos. 87–3 and 87–4, and have been billed for, or have paid, the disposal fees established by Broward County pursuant to those ordinances (the 'haulers')." Second Amended Complaint, ¶ 6a.

### 4. THE DEFENDANT'S ARGUMENTS FOR SUMMARY JUDGMENT

In their motions for summary judgment, the County and the RRB argue, among

other things, that Oceans Eleven lacks standing under Article III of the United States Constitution to assert the claims in the Second Amended Complaint and that this Court is therefore without subject matter jurisdiction to adjudicate those claims. The Defendants further . argue that, while Seacoast may once have satisfied the Article III standing requirement on account of its past hauling contract with the County, the relevant statute of limitations precludes Seacoast from advancing its claims now.

## II. LAW AND ANALYSIS

### A. SUMMARY JUDGMENT STANDARD

Summary judgment shall be entered if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "When both parties move for summary judgment, the court must evaluate each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration." *Wenger Mfg., Inc. v. Coating Mach. Sys., Inc.*, 239 F.3d 1225, 1231 (Fed.Cir.2001).

### B. THE PLAINTIFFS' CLAIMS ARE SECTION 1983 CLAIMS, NOT DIRECT CLAIMS UNDER THE CONSTITUTION

■ As a threshold matter, the Court notes that counts I and II of the Plaintiffs' Second Amended Complaint purport to state claims against the Defendants based directly upon the Commerce Clause and Fourteenth Amendment Due Process Clause of the Constitution. Section 1983, upon which Count III is predicated, is the proper avenue for the Plaintiffs to seek remedies for alleged constitutional violations. *See City of Hialeah v. Rojas*, 311 F.3d 1096, 1103, n .1 (11th Cir.2002) ("Section 1983 creates no substantive rights; it merely creates a remedy for deprivations of federal constitutional and statutory rights."); *see also, Azul–Pacifico, Inc. v. City of Los Angeles*, 973 F.2d 704, 705 (9th Cir.1992) ("Plaintiff has no cause of action directly under the United States Constitution. We have previously held that a litigant complaining of a violation of a constitutional right must utilize 42 U.S.C. § 1983."). Counts I and II of the Second Amended Complaint are therefore improperly plead, and redundant of Count III. The Court therefore grants summary judgment for the Defendants and against the Plaintiffs on Counts I and II of the Second Amended Complaint, *ab initio*. The Court will nevertheless consider the allegations in the Second Amended Complaint and the Plaintiffs' properly plead claims for relief in Count III under section 1983.

### B. STANDING UNDER ARTICLE III OF THE UNITED STATES CONSTITUTION

Under Article III of the United States Constitution, federal courts may adjudicate only actual "Cases" and "Controversies." U .S. Const., art. III, § 2. The doctrine of standing is an essential element that sets constitutionally justiciable Cases and Controversies apart from other sorts of disputes. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

■ "[T]he irreducible constitutional minimum of standing consists of three ele-

ments." *Id.* "First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Id.* (citations and internal quotations omitted). "Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court.'" *Id.* (quoting *Simon v. Eastern Ky. Welfare Rights Org.,* 426 U.S. 26, 41–42, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976)). "Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Id.* (quoting *Simon* at 38, 43).

██ "The party invoking federal jurisdiction bears the burden of establishing these elements." *Id.* at 561, 112 S.Ct. 2130. "In response to a summary judgment motion *.* . . the plaintiff can no longer rest on . . . 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts,' which for purposes of the summary judgment motion will be taken to be true." *Id.*

"When the suit is one challenging the legality of government action or inaction, the nature and extent of facts that must be averred (at the summary judgment stage) . . . in order to establish standing depends considerably upon whether the plaintiff is himself an object of the action . . . at issue." *Id.* "[W]hen the plaintiff is not himself the object of the government action . . . he challenges, standing is not precluded, but it is ordinarily 'substantially more difficult' to establish." *Id.* (quoting *Allen v. Wright,* 468 U.S. 737, 758, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984)).

██ Advancing one's claims as the putative representative of a class of claimants does not obviate or diminish the Article III standing requirement. In order for a class action to proceed, "it must be established that the proposed class representatives have standing to pursue the claims as to which classwide relief is sought." *Wooden v. Bd. of Regents of the Univ. Sys. of Georgia,* 247 F.3d 1262, 1287 (11th Cir. 2001).

## C.  OCEANS ELEVEN DOES NOT HAVING ARTICLE III STANDING

██ Pursuant to section 1983, the Plaintiffs challenge Ordinance Nos. 87–3 and 87–4. The Plaintiffs allege that the solid waste flow control provisions of the ordinances unconstitutionally discriminate against interstate commerce, in violation of the Commerce Clause, and deprive them of an alleged property interest in potential waste disposal contracts, in violation of their substantive due process rights under the Fourteenth Amendment.[4]

Ordinance No. 87–4 regulates the flow of *some* solid waste generated in the District, that is, solid waste generated *in the unincorporated areas of the County.* Oceans

---

4.  The Court notes that Ordinance No. 87–3 does not regulate the flow of solid waste in the District. Ordinance No. 87–3 created the District itself, the RRB, and other organs of the District. The ordinance does not, however, work to regulate the flow of solid waste in the District. The Plaintiffs have not identi- fied, and cannot identify, any provision of the ordinance that serves to regulate the flow of solid waste. The Plaintiffs therefore have no basis to challenge Ordinance No. 87–3 under their Commerce or Due Process Clause theories.

Eleven's sworn discovery responses make plain that it does not generate solid waste in the unincorporated areas of the County. Oceans Eleven is therefore, to put it simply, utterly unaffected by the County's flow control ordinance.

Oceans Eleven *might* have standing to assert claims against the City of Hollywood, Florida, the location of its principal place of business, or perhaps some other Contract Community in which Oceans Eleven does generate solid waste, but under the Article III standing principles delineated in *Lujan,* Oceans Eleven has no more standing to challenge the County's flow control ordinance than would a resident of neighboring Miami Dade County, which is outside the District altogether. Oceans Eleven lacks standing to assert its claims in the Second Amended Complaint, and this Court is therefore without subject matter jurisdiction to consider them further.

### D. SEACOAST'S CLAIMS ARE TIME–BARRED

■ Unlike Oceans Eleven, Seacoast, as a hauler of solid waste subject to Ordinance No. 87–4, would arguably have Article III standing to challenge the constitutionality of the ordinance, so long as it properly alleged and established the other predicates for standing. But, it is axiomatic that a plaintiff must file its claims within the time period allotted by the applicable statute of limitations. Likewise, "[t]o have standing to represent a class, the named plaintiff's claims must be timely filed." *City of Hialeah v. Rojas,* 311 F.3d 1096, 1101 (11th Cir.2002).

■ It is undisputed that Seacoast had a contract to haul solid waste generated in a part of the unincorporated areas of Broward County, and was thereby subject to Ordinance No. 87–4, from 1973 until, at the very latest, 1993. Yet, Seacoast first advanced its claims, along with Oceans Eleven, in the Plaintiffs' motion to intervene in the *Coastal Carting* case in September 2000. A plaintiff "must commence a § 1983 claim arising in Florida within four years of the allegedly unconstitutional or otherwise illegal act." *Burton v. City of Belle Glade,* 178 F.3d 1175, 1188 (11th Cir.1999) (citations omitted). The relevant "act" in this context is the County's enacting its flow control ordinance in 1987. *See e.g., Azul–Pacifico,* 973 F.2d at 705 and *National Advertising Co. v. City of Raleigh,* 947 F.2d 1158, 1163–64 (4th Cir. 1991). On this measure, Seacoast's claims are clearly time-barred.

In an attempt to escape this fate, citing, *inter alia, Kuhnle Bros., Inc. v. County of Geauga,* 103 F.3d 516, 521–23 (6th Cir. 1997), Seacoast argues that the County's flow control ordinance constitutes a "continuing violation" of Seacoast's constitutionally protected interests, tolling the statute of limitations. Seacoast is correct that, under the continuing violation doctrine, "just as a new injury was allegedly inflicted on [the plaintiff] each day that [the challenged ordinance] was in effect, 'a new limitations period began to run each day as to that day's damage.'" *Kuhnle,* 103 F.3d at 522–23 (quoting *Baker v. F & F Inv. Co.,* 489 F.2d 829, 836 (7th Cir. 1973)). Seacoast fails to acknowledge, however, that even if the continuing violation doctrine were applicable to the instant case—that is, the flow control ordinance inflicted a "continuing and accumulating harm" on Seacoast (*see Hanover Shoe, Inc. v. United Shoe Mach. Corp.,* 392 U.S. 481, 502, 88 S.Ct. 2224, 20 L.Ed.2d 1231 (1968))—Seacoast's claims would still be time-barred.

The continuing violation doctrine does not render the applicable statute of limitations irrelevant. *See Kuhnle,* 103 F.3d at

522–23. Seacoast would still only be entitled to recover those damages, if any, that were caused by the County's flow control ordinance on or after the date four years prior to the date on which Seacoast filed its claims here. *See id.* (citing *Baker,* 489 F.2d at 836 and *Hanover Shoe,* 392 U.S. at 502, 88 S.Ct. 2224). Because Seacoast was not subject to the County's flow control ordinance after 1993 (at the very latest), it sustained no injury in the four years immediately prior to bringing the instant action. Thus, even under the continuing violation doctrine, Seacoast's claims would be time-barred.

### III. Conclusion

Oceans Eleven has no standing under Article III of the United States Constitution to advance the claims in the Second Amended Complaint, either as an individual party or as a class action representative. Seacoast is likewise incapable of advancing the claims in either capacity because Seacoast's claims are time-barred.

The Court therefore hereby **ORDERS** and **ADJUDGES** that summary judgment is granted in favor of the Defendants and against the Plaintiffs.