Wayne Oliver **BOOTH**, Individually and on behalf of all others similarly situated

v.

**PRINCE GEORGE'S COUNTY, MARY-LAND**, et al.

Civ. No. Y-74-811.

United States District Court, D. Maryland.

Jan. 23, 1975.

Supplemental Opinion March 21, 1975.

Alfonso N. Pearson, Seat Pleasant, Md., Joel G. Contreras, Joel L. Selig, Linda E. Perle, J. Harold Flannery, Lawyers' Committee For Civil Rights Under Law, Washington, D.C., for plain-.tiff.

Robert N. Boyer, Associate County Atty., Upper Marlboro, Md., for defendants.

JOSEPH H. YOUNG, District Judge:

The plaintiff, a black applicant for a position as a police officer with the Prince George's County Police Department (hereinafter referred to as "the Department"), brings this action for declaratory and equitable relief from certain alleged discriminatory employment practices purportedly engaged in by the Department. He does so on his own behalf and as a representative of a class defined as all past, present, and future black applicants for employment with the Department and all blacks who would have applied but for the Department's alleged discriminatory practices. The defendants named by the plaintiff include Prince George's County, the County Personnel Board, the County Executive, the five members of the Personnel Board, Board Personnel Officer Nicholas B. Wilson, and the Chief of Police of Prince George's County.

There are three motions pending at this time: (1) The defendants' motion to dismiss filed pursuant to Fed.R.Civ.P. 12(b); (2) The plaintiff's Rule 65 motion for a preliminary injunction; and (3) The plaintiff's motion under Fed.R. Civ.P. 23(c)(1), asking the Court to de-

termine that the class action may be maintained. The motions raise three basic questions: does the plaintiff have standing to represent the class; if not, can the class action be maintained; and, if it can be maintained, is a preliminary injunction warranted?

## I. PRELIMINARY QUESTIONS

██ Before reaching those questions, there are a number of lesser objections to the plaintiff's complaint raised in the defendants' motion to dismiss and their brief in opposition to the motion for a preliminary injunction. The plaintiff asserts that this Court has subject matter jurisdiction over his action by virtue of 28 U.S.C. §§ 1331, 1343, 2201 and 2202, 42 U.S.C. §§ 1981 and 1983, and the Fourteenth Amendment. Sorting out this statutory hodge-podge, it appears the plaintiff is arguing that he has a cause of action against the defendant County, Personnel Board, and the individual defendants arising directly under the Fourteenth Amendment and that this Court has jurisdiction over that action by virtue of §§ 1331 and 1343. He further argues that he has a cause of action against all of the defendants under § 1981, with jurisdiction resting on § 1343. Conceding that Kenosha v. Bruno, 412 U.S. 507, 513, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973), rules out an action against the County and the Personnel Board under § 1983, the plaintiff maintains that § 1983 gives him a right to bring the action against the individual defendants, with jurisdiction grounded in § 1343.[1]

The apparent purpose of this rather elaborate construction is to side-step *Kenosha* insofar as the action brought directly against the County and its Personnel Board is concerned. The question, therefore, is whether the Fourteenth Amendment and § 1981 support a cause of action against local governmental units.

██ The defendants in their motion to dismiss and their brief in opposition to the plaintiff's motion for a preliminary injunction do not address the question of whether or not the Fourteenth Amendment itself gives such a cause of action. This Court, however, previously held that the Fourteenth Amendment does give a cause of action against governmental units such as the County and Board. *See* Bennett v. Gravelle, 323 F. Supp. 203, 216–218 (D.Md.), aff'd, 451 F.2d 1011 (4th Cir. 1971), cert. denied, 407 U.S. 917, 92 S.Ct. 2451, 32 L.Ed.2d 692 (1972); *cf.* School Board v. Allen, 240 F.2d 59, 63 (4th Cir. 1956), cert. denied, 353 U.S. 910, 77 S.Ct. 667, 1 L.Ed. 2d 664 (1957).[2]

1. The plaintiff's reference to the declaratory judgment provisions, 28 U.S.C. §§ 2201 and 2202, does nothing to further his argument. Those sections are procedural, not jurisdictional, and they do not create a cause of action in and of themselves. *See* Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671–672, 70 S.Ct. 876, 94 L.Ed. 1194 (1950).

2. The Eastern District of Pennsylvania, in a case closely analogous to this one, has also concluded that the Fourteenth Amendment will directly support such a cause of action. *See* Maybanks v. Ingraham, 378 F.Supp. 913, 914–916 (E.D.Pa.1974).

The defendants do offer one challenge to the plaintiff's Fourteenth Amendment cause of action. They argue that the plaintiff and his class have not satisfied the $10,000 jurisdictional amount prerequisite for § 1331 jurisdiction. While the plaintiff has alleged that there is $10,000 at stake, it is not clear from his pleadings that there is such an amount at issue as to each plaintiff in the class. The defendants argue on the basis of Zahn v. International Paper Co., 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973), that each plaintiff must so allege. *Zahn,* of course, concerned a Rule 23(b)(3) class action while the instant case is brought pursuant to (b)(2). Therefore the appropriate determination to be made would be whether this is a "true" class action in which the claims of the plaintiff class can be aggregated to meet § 1331's requisite amount. Rather than count how many angels can dance on the head of that pin, however, it would seem that this Court clearly has jurisdiction over the Fourteenth Amendment claim on the basis of § 1343(3), since in this case the Fourteenth Amendment action undoubtedly

The plaintiff's § 1981 basis for his cause of action against the two governmental units is more troublesome. In *Bennett* this court held that § 1981 would not support such a cause of action. *See* 323 F.Supp. at 215–216. Other courts have reached a contrary conclusion. *See, e. g.,* Maybanks v. Ingraham, 378 F.Supp. 913, 916–918 (E.D. Pa.1974). Given this Court's conclusion that the plaintiff can maintain his action against the County and Board directly under the Fourteenth Amendment, there is no need to reexamine the *Bennett* rationale here.[3]

█ The final preliminary matter raised by the defendants is their contention that the individual defendant officials are immune from suit. While public officials do possess certain qualified immunity, at this preliminary stage it would be premature to determine the degree to which the officials named here may draw the cloak of qualified immunity around themselves. *See* Scheuer v. Rhodes, 416 U.S. 232, 238–250, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

## II. STANDING, MAINTENANCE OF THE CLASS ACTION, AND THE PRELIMINARY INJUNCTION

The questions of standing, maintenance of the class action, and the preliminary injunction were the subject of a hearing before this Court. In the interest of focusing on these specific problem areas, the hearing was conducted with a degree of informality—the parties were asked to proffer the evidence said to lay the factual basis for their legal arguments. On the basis of those proffers and the affidavits and interrogatories presently filed, the following relevant facts emerge.

### A. *The Facts*

The plaintiff, Booth, applied for a position as an officer with the Department in November, 1973. At that time the Department required applicants to be between 21–30 years of age, to have a high school diploma or its equivalent, to meet certain height and weight requirements, to be of good moral character as determined by a background investigation, to be in good physical condition as demonstrated by a physical examination and agility test, to possess a valid Maryland driver's license, to score 70 percent or better on the written examination then being utilized, and to be deemed suitable after an oral examination by three commissioned officers of the Department—the Police Oral Review Board.

The plaintiff passed the written examination—the International Personnel Management Association's (formerly Public Personnel Association) Police Entrance Examination—with a score of 77.5 percent. Apparently Booth met all of the Department's objective requirements. He was required to take a polygraph test, however, because his background investigation yielded derogatory information. The plaintiff agreed to take the test, and the examining officer found his answers to be truthful.

The request for a polygraph test apparently caused Booth some concern, for on March 4, 1974, just prior to taking the test, he engaged counsel. The day following the test, March 7, 1974, Booth went before the Oral Review Board. During the course of the interview, he exhibited certain attitudes and respond-

---

is one to redress the deprivation, under color of State law, of a right secured by the Constitution of the United States. *Cf.* 7 C. Wright & A. Miller, Federal Practice and Procedure, Civil § 1756, at 558–59 (1972).

3. Should the case ever reach a posture where it will be necessary to decide damages or back pay awards, the § 1981 problem left open now will have to be reexamined, particularly in light of the holding in *Maybanks* that a damage action against a governmental entity will lie under § 1981. *See* 378 F.Supp. at 918. This Court, of course, held in *Bennett* that only injunctive relief was available against a local government under the Fourteenth Amendment. *See* 323 F.Supp. at 217–218.

ed to questions with answers the Board deemed inconsistent, leading the Board to conclude that Booth's personality was not consistent with that required of a police officer. One member of the Board felt that psychological tests should be conducted, but the Board's supervising officer did advise the plaintiff orally that he had failed to pass the Board's interview. The following day, March 8, plaintiff's counsel called the Department and was told that the plaintiff would receive a written decision from the Department including the reasons for the Department's decision. Four days later, on March 12, plaintiff's counsel spoke to the County Police Chief and was told that the Chief would review the matter. The result of that review was a letter from the Chief dated April 3, 1974 which stated the Department would withhold further action on the plaintiff's application pending a psychiatric examination of him by the Department.

On the advice of counsel, plaintiff has not responded to the Department's request. On May 3, 1974 plaintiff filed a complaint with the Equal Employment Opportunity Commission, and on July 30, 1974 filed the present action. He has chosen not to pursue his complaint with the Commission nor has he filed a complaint with an appropriate County agency. The Department maintains that Booth's application is still pending and that they await his response to their request.

The plaintiff seeks to characterize his case as but one example of a pattern of racial discrimination in the employment practices of the Department. To demonstrate the pattern, he relies on a series of racial ratios. At this point in the proceedings, there is no need to dwell on those ratios or their implications.

B. *Standing*

The Fourth Circuit has recognized the plausibility of the argument that in Rule 23 cases the district court, in accordance with Fed.R.Civ.P. 23(c)(1), should make an interim determination on the plaintiff's standing to represent the class before it makes any final determination on his individual claim, but has not defined the scope of the finding necessary to sustain that determination. *See* Cox v. Babcock & Wilcox Co., 471 F.2d 13, 15 (4th Cir. 1972); Moss v. Lane Co., Inc., 471 F.2d 853, 855 (4th Cir. 1973); Brown v. Gaston County Dyeing Mach. Co., 457 F.2d 1377, 1380 (4th Cir.), cert. denied, 409 U.S. 982, 93 S.Ct. 319, 34 L.Ed.2d 246 (1972).

The defendants contend that Booth's action is premature and that, therefore, there is no case or controversy before this Court, *i. e.*, Booth lacks standing to bring the action. Such a contention goes to two distinct issues: (1) Has the plaintiff suffered a wrong giving rise to a case or controversy?, and (2) if not, does he have standing to represent a class of those who have been wronged? The essential problem here is one of determining whether or not the plaintiff is a member of the class he seeks to represent. *See* 7 C. Wright & A. Miller, Federal Practice and Procedure, Civil § 1761, at 584 n. 6 and accompanying text (1972). That the named plaintiff must be a member of the class, is an inherent prerequisite arising by implication from the real-party-in-interest requirement of Fed.R.Civ. P. 17(a). *See id.* at 584–85. As Professors Wright and Miller define the problem, the plaintiff must allege that he has been personally affected by, or actually suffered from, the defendant's allegedly discriminatory actions. *See id.* at 589–91 nn. 21–23 and accompanying text. If the court finds that the representative has actually been harmed or affected by the challenged conduct, he has standing, but if the court determines that the plaintiff is a mere volunteer and is not personally aggrieved, he will not be allowed to maintain the suit. *See* 7A C. Wright & A. Miller, Federal

Practice and Procedure § 1776, at 38–40 nn. 77–78 and accompanying text (1972).

■ The difficulty is in giving content to the standing concept. *Cf.* C. Wright, Handbook of the Law of Federal Courts 39–45 (2d ed. 1970). The distinction to be made with regard to class actions is between inquiring into the merits of the named plaintiff's individual claim, and deciding if the plaintiff is sufficiently related to the class he seeks to represent to be a real party in interest. *Cf.* Huff v. N. D. Cass Co., 485 F. 2d 710, 713–714 (5th Cir. 1973) (en banc).

To draw that distinction, the following three examples provide some assistance. In a class action for injunctive relief from certain allegedly discriminatory hiring practices by the Georgia penal system, the Georgia district court held that prison inmates who had never applied for employment could not represent a class of those purportedly wronged by the discrimination. *See* Wilson v. Kelley, 294 F.Supp. 1005, 1010 (N.D.Ga.), aff'd per curiam, 393 U.S. 266, 89 S.Ct. 477, 21 L.Ed.2d 425 (1968). Similarly, blacks who were neither aged nor chronically ill lacked standing to bring a class action for desegregation of a municipal nursing home. *See* Thaxton v. Vaughan, 321 F. 2d 474, 476 (4th Cir. 1963). Though employing a different analytical framework, the First Circuit, in a case somewhat analogous to this one, held that minority applicants who had taken a challenged employment test could not represent those who were allegedly discouraged from taking the test. *See* Castro v. Beecher, 459 F.2d 725, 732 (1st Cir. 1972).[4]

■ Against that background, the question now pending is whether the facts, as alleged by the plaintiff, indicate that he suffered a wrong akin to the wrong allegedly suffered by the class he wishes to represent. The plaintiff applied for employment and passed all of the requirements for the position he seeks except for the last one—the Oral Review Board. The Department maintains that his application is pending even now. The plaintiff's response is that the Department's position is merely "pretextual." He apparently contends that the request for a psychological evaluation occurred only after it became apparent to the Department that the plaintiff might follow up rejection with a civil rights complaint. Neither the fact that the plaintiff had been orally advised that he had failed to pass the examination, nor the fact that nearly a month passed before he was advised of the need of a psychiatric examination is conclusive here. Furthermore, there is no compelling evidence to suggest that the plaintiff was required to undergo tests not a regular part of the Department's application process. The plaintiff had retained counsel who kept careful watch over the progress of his application. No complaint was filed until a month after the April, 1974 letter was received. No decision has been made on the plaintiff's application, and the Department is still willing to complete the application evaluation process. There are an ample number of positions available to the plaintiff should his application be approved. In its present posture, then, the plaintiff's cause of action simply does not allege that he has been injured. *Cf.* Blanks v. Register, 493 F.2d 697 (4th Cir.), cert. denied, 419 U.S. 841, 95 S.Ct. 72, 42 L.Ed.2d 68 (1974). Quite apart from the merits of his individual claim, the named plaintiff, having suffered no injury, cannot be a real party in interest having standing to

---

4. The First Circuit relied on the prerequisites of Fed.R.Civ.P. 23(a) to hold that the named plaintiffs in *Beecher* could not represent the class in question. Professors Wright and Miller suggest that standing is a prerequisite distinct from the requirements of subsections (a) and (b). *See* 7A C. Wright & A. Miller, *supra* § 1776, at 38–39 n. 77 and accompanying text.

sue on behalf of a class of persons who allegedly have been injured, *cf.* O'Shea v. Littleton, 414 U.S. 488, 494, 93 S.Ct. 1544, 36 L.Ed.2d 306 (1974), particularly since it is the injury itself which defines the class.

## C. *Maintenance of the Class Action*

The experience of the federal courts over the last two decades has been that racial discrimination, particularly discrimination in employment, is often subtle and not easily proved. The consequences of such discrimination are most grave, both for the individual victim and for society at large. Racial discrimination in employment is particularly abhorrent if practiced by a governmental entity—federal, state, or local. Such discrimination must be rooted out of our society, and therefore federal courts, when called upon to sit in judgment upon a charge of racial discrimination by a governmental agency, should be particularly careful about throwing up procedural roadblocks to consideration of the merits of such charges. Given the commitment of resources already made by counsel on both sides in this case, there would appear to be no real value in dismissing the class action immediately. The Fourth Circuit suggested a practical alternative in Cox v. Babcock & Wilcox Co., 471 F.2d 13, 16 (4th Cir. 1972), where, after finding that the prospective representative in a class action did not have standing to bring the action on behalf of the class, it required the district court to retain an employment discrimination class action on its docket for a reasonable time in order to allow the class to come forward with a more representative named plaintiff. *See also* Maddox v. Board of Trustees, 487 F.2d 1397 (4th Cir. 1973) [unreported per curiam decision]. A similar

course of action is appropriate here. While the named plaintiff's individual cause of action will be dismissed without prejudice for lack of subject matter jurisdiction, there being no case or controversy presented by it, the class action will remain on the docket of this Court for 30 days, during which time the class may substitute a named plaintiff who does in fact have standing to sue on behalf of the class.[5]

## D. *The Preliminary Injunction*

Having decided that the class action will continue on the docket for at least 30 days, the final question remaining is whether or not a preliminary injunction is required. In order to secure a preliminary injunction, the plaintiff must allege sufficient facts to suggest that the moving party has a reasonable probability of success upon final hearing. Furthermore, he must show that he will be irreparably harmed if the injunction is not granted. Additionally, in actions brought against public agencies, the potential harm to the public should be considered. *See* Vulcan Society of New York City Fire Dep't, Inc. v. Civil Service Comm'n, 353 F.Supp. 1092, 1094 (S.D.N.Y.), aff'd in part, and remanded, 490 F.2d 387 (2d Cir. 1973).

Assuming that the plaintiff class will find a suitable representative, its case at this point rests primarily on discrepancies between the ratios of whites to blacks in Prince George's County and the ratio of whites to blacks in the Department. But, as this Court noted in Harper v. Mayor and City Council of Baltimore, 359 F.Supp. 1187, 1193–1194 n. 5 (D. Md.), modified, 486 F.2d 1134 (1973): "To hold that a discrepancy between the employment population and the community population is prima facie a violation of law would not be wise, and is not requir-

---

5. In permitting the class to come forward with a new named plaintiff, the Court would bring to the attention of counsel Local Rule No. 20. If counsel for the plaintiff class intend to solicit any members of the class with the intention of offering one or more of them as class representatives, the nature and form of such solicitation must be brought to the attention of this Court for its consent and approval before any such solicitation is made.

ed." In *Harper*, however, the Court did find a history of deliberate discrimination against blacks. After that finding of historical discrimination, the Court turned to the employment tests of which specific complaint was made and applied the analysis mandated by Griggs v. Duke Power Co., 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), to those tests to determine if they froze the status quo of prior discriminatory employment practices. *See* 359 F.Supp. at 1196 n. 13 and accompanying text.

Here the class has not alleged specific acts of discrimination such as those presented in *Harper*, but, given the fact that there were no blacks on the force before 1967, it may well be that such an allegation can be made and supported. If the plaintiff class does place its action within the *Harper* mold, then its attack upon the written examination, the high school education requirement, the background investigation, etc., may well succeed.

Nonetheless, even if the plaintiff class could meet the reasonable-likelihood-of-success requirement, it is not clear that an injunction is needed to prevent irreparable injury. At present the Department has neither an eligibility list nor a written examination. It has instituted an affirmative action program, and it is attempting to verify the job relatedness of the old test or, in the alternative, devise a new test that is job-related. Until it succeeds with either effort, no hiring is planned. It is difficult to see how a program not yet implemented and presently being formulated to meet at least some of the objections raised in this lawsuit, will jeopardize the interests of the plaintiff class.

Finally, the public has a vital interest in this cause of action. This Court did grant a preliminary injunction in *Harper*. It did so, however, with the consent of the defendants, and there were only 17 senior-level positions at stake. A more appropriate case to consider is the *Vulcan* case, *supra*. There the plaintiffs sought to enjoin the appointment of 85 firemen sorely needed by the undermanned New York City Fire Department. The district court concluded that an injunction should not issue because "[t]he harm to the public outweighs the claimed injury asserted by plaintiffs." 353 F.Supp. at 1094. Similarly in this case, the interest of the public in police protection outweighs whatever claim the plaintiff class may have for preliminary injunctive relief. As noted by the defendants, the County's average of officers to residents is considerably below the national ratio at a time when crime in Prince George's County is rising dramatically. The vacancies at issue here exist because the County Council was attempting to respond to the crime increase by enlarging the police force. In determining whether injunctive relief is to be granted, this Court is required to balance competing equities. Given the facts presently before it, the Court must recognize the public's interest in seeing these positions filled, and filled promptly, and therefore the motion of the plaintiff class for a preliminary injunction will be denied. Should the fact situation change, the class may, of course, renew its motion.

For the reasons stated, it is this 23rd day of January, 1975, by the United States District Court for the District of Maryland, ordered:

1. That the plaintiff, Wayne Oliver Booth, be, and he is, hereby dismissed without prejudice as a party to this action;

2. That the class action be, and the same is, hereby dismissed 30 days from this date unless the class comes forward with a named plaintiff having standing as a real party in interest to be its representative; and

3. That the motion for a preliminary injunction be, and the same is, hereby denied.

### SUPPLEMENTAL OPINION

Wayne Oliver Booth, the original named plaintiff in this action, brought

suit on behalf of a class defined as all past, present, and future black applicants for employment with the Prince George's County Police Department, and all blacks who would have applied but for the Department's alleged discriminatory employment practices. In a motion to dismiss, filed pursuant to Fed.R.Civ.P. 12 (b), defendants challenged Booth's standing to represent the class. Booth, in turn, requested the Court to enter a preliminary injunction barring further hiring by the Department until the suit was resolved, and, in accordance with Fed.R.Civ.P. 23(c)(1), sought a determination that the class suit might be maintained.

On October 11, 1974, the Court held a hearing on the pending motions. Following that hearing, the Court issued a Memorandum and Order dated January 23, 1975 in which it dismissed the named plaintiff but permitted the class action to remain on the docket for 30 days to allow the class to come forward with a new named plaintiff.[1] The Court also brought Local Rule 20 to the attention of counsel in order to make counsel aware that any contact between them and the purported class would be only with the Court's express approval and supervision.[2]

The plaintiff class has not come forward with a new named plaintiff. Instead, counsel for the alleged plaintiff class seeks permission to notify class members of the pendency of the present suit. Counsel also asks that the County be required to supply names of those

1. The rationale of the Court's January 23, 1975 ruling began with the premise, derived from the Fifth Circuit's decision in Huff v. N. D. Cass Co., 485 F.2d 710 (5th Cir. 1973), that, in Judge Godbold's words, the trial court, in Rule 23 cases, has the dual, and somewhat contradictory obligation to "find out about the plaintiff's claim at an early stage" but not to "find out too much." See 485 F.2d at 714. Huff in essence says that the trial court, pursuant to Rule 23, is required to determine if the named plaintiff in a class action meets the requirements of Rule 23(a) and (b) without determining whether or not the named plaintiff can prove the merits of his individual claim against the defendant. It is possible to draw a similar type of analysis from recent Fourth Circuit opinions. See, e. g., Moss v. Lane Co., 471 F.2d 853 (4th Cir. 1973); Cox v. Babcock and Wilcox, 471 F.2d 13 (4th Cir. 1972); Brown v. Gaston County Dyeing Mach. Co., 457 F.2d 1377 (4th Cir.), cert. denied, 409 U.S. 982, 93 S.Ct. 319, 34 L.Ed.2d 246 (1972).

The Court attempted to apply the Huff mode of analysis by conceiving of the action as a suit by the class against the defendants. To determine whether or not the Article III case or controversy prerequisite for subject matter jurisdiction was met, the Court looked to the allegations in the complaint as to the alleged existence of "an injury in fact," cf. Barlow v. Collins, 397 U.S. 159, 167–68, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970) (Brennan, J. concurring in result), to the class. Finding such an allegation, the Court concluded that the class had standing as required by Article III and that the Court therefore had subject matter jurisdiction. The Court visualized the requirements of Rule 23 (a) and (b), not as a problem of subject matter jurisdiction, but rather as a real party in interest screening process and was satisfied that the purpose of Rule 23(a) and (b) was to assure that class actions are brought by class members—real parties in interest to the class action. See 7 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 1761, at 584–85 (1972).

Finding that the named plaintiff lacked standing, the Court dismissed the action as to Booth, relying upon Blanks v. Register, 493 F.2d 697 (4th Cir.), cert. denied, 419 U.S. 841, 95 S.Ct. 72, 42 L.Ed.2d 68 (1974), but did not dismiss the class action inasmuch as the subject matter jurisdiction of the Court rested solely on the assertion of an injury in fact to the class rather than the named plaintiff. Since it conceived of the dismissal of Booth as a real party in interest problem, the Court referred to Rule 17(a) and adopted the policy, mandated by the last sentence in Rule 17(a), of permitting a brief period of time for adding a new plaintiff when the original plaintiff has been dismissed for failure to satisfy real party in interest concerns.

2. The Court did not intend to imply by its reference to Local Rule 20 that it would approve of solicitations by counsel to members of the class. Rather, it merely wanted to alert counsel to the fact that any such solicitation could only be made with the express approval and supervision of the Court.

who have applied for positions with the Department.

The defendants' response is twofold, arguing first that the class action should have died simultaneously with the dismissal of the named plaintiff and that the Court erred in permitting the class aspect of the suit to remain on the docket, and second, that, given defendants' conclusion that the action is dead in reality, if not insofar as the Court's docket is concerned, a court order compelling the defendants to permit the requested discovery of their records is akin to permitting discovery before the commencement of an action—discovery for which there is no provision in the Federal Rules.

■ Two recent Supreme Court opinions have addressed this problem. *See* Sosna v. Iowa, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975); Board of School Comm'rs v. Jacobs, 420 U.S. 128, 95 S.Ct. 848, 43 L.Ed.2d 74 (1975). Taken together, these cases appear to stand for the proposition that where a named plaintiff is dismissed from a class action because there is no case or controversy between him and the defendant and where the class itself has been previously certified pursuant to Rule 23(c), then, in certain circumstances, the class action will be permitted to continue if a live case or controversy exists between the certified class and the defendants. *See* Sosna v. Iowa, 419 U.S. 393, 402, 95 S.Ct. 553, 558 (1975). But where a named plaintiff is dismissed from the class action because there is no case or controversy between him and the defendant and where the class itself has not been properly certified in accordance with Rule 23(c), the complaint of the class must be simultaneously dismissed for failure to

set forth a case or controversy as required by Article III of the Constitution. *See* Board of School Comm'rs v. Jacobs, 420 U.S. 128, 129, 95 S.Ct. 848, 850 (1975).

■ There is no need to dwell on what Justice White characterized as the "flexible standard," *see* 420 U.S. 416, 95 S.Ct. at 556 n. 4 (White, J. dissenting), employed in *Sosna* for determining when, after a named plaintiff has been dismissed, a class action retains sufficient case or controversy indicia to satisfy Article III. In the present case there clearly has never been a Rule 23(c) certification. The named plaintiff was dismissed for lack of standing at the outset. The question of certifying the class was not reached and would not be reached until the purported class came forward with a new named plaintiff. *Jacobs* in effect says that unless the existence of the class has been formally recognized via certification, there can be no case or controversy cognizable by this Court after it dismisses the named plaintiff to the class action.

*Jacobs* and *Sosna* compel the conclusion that the Court should have dismissed the named plaintiff and the class action simultaneously. Accordingly, the dismissal of the class action shall now be ordered. Dismissal, however, is without prejudice, and, should the plaintiff class succeed in producing a new named plaintiff, no future action is barred by the Court's decision here.

For the reasons stated, it is this 21st day of March, 1975, by the United States District Court for the District of Maryland, Ordered:

That the action of the purported class in the above entitled case be, and the same is, hereby dismissed.