Elvis E. JOHNSON, Plaintiff,

v.

Robert C. SAWYER, Dale V. Braun, Sally Sassen, Robert G. Stone, William J. Kurak, Michael Orth, Charles Peterson, Robert M. McKeever, and the United States of America, Defendants.

Civ. No. H–83–2173.

United States District Court,
S.D. Texas,
Houston Division.

Aug. 4, 1986.

Larry Campagna, Chamberlain, Hrdlicka, White, Johnson & Williams, Houston, Tex., for plaintiff.

Nancy Pecht, Asst. U.S. Atty., Houston, Tex., John S. Miles, Trial Atty., Tax Div., Dept. of Justice, Washington, D.C., for defendants.

### MEMORANDUM AND ORDER

SINGLETON, Chief Judge.

This civil suit revolves around the press release issued by the Internal Revenue Ser-

vice ("IRS") after Mr. Elvis Johnson pled guilty to tax evasion. This Memorandum And Order resolves various aspects of the parties' cross-motions for summary judgment.

## I. FACTUAL BACKGROUND

### A. The Criminal Prosecution

A government investigation concluded that Mr. and Mrs. Johnson had evaded income taxes in 1974 and 1975 by altering documents and claiming false deductions on their joint return.[1] The government accordingly decided to prosecute them for tax evasion under 26 U.S.C. § 7201.

Mr. Johnson ("Johnson") and Assistant U.S. Attorney Jim Powers ("Powers") worked out the following plea bargain: if Johnson pled guilty to 1975 tax evasion, the government would (1) not prosecute Johnson concerning the 1974 return, (2) not prosecute Johnson's wife concerning the 1974 or 1975 returns, and (3) not oppose a probated sentence.[2] Powers accordingly filed a Criminal Information on 10 April 1981 charging Johnson with 1975 tax evasion,[3] to which Johnson pled guilty and was given a probated sentence.

1. *See* the deposition of Robert Stone submitted on 28 May 1985 in support of Johnson's summary judgment motion (docket item no. 75) ("Stone Deposition"), Exhibit 1.

2. Johnson's Plea of Guilty Form, Criminal No. G–81–2, ¶ X; *see also* the transcript of Johnson's arraignment and sentencing, p. 8–10.

3. More fully, that Information stated:

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

UNITED STATES OF AMERICA

Vs.    CRIMINAL NO. G–81–2

ELVIS JOHNSON

CRIMINAL INFORMATION

THE UNITED STATES ATTORNEY CHARGES:
    That on or about April 15, 1976, in the Southern District of Texas, the defendant ELVIS JOHNSON, a resident of Galveston, Texas, did willfully and knowingly attempt to evade and defeat

The summary judgment evidence submitted in this civil case shows that Powers had also assented to Johnson's efforts to forestall publicity about the conviction. Thus, even though Johnson was commonly known as "Johnny" at American National and throughout the Galveston area in which he resided, Powers agreed to have the court documents identify the criminal defendant as an "Elvis E. Johnson" residing in Houston.[4] To allay Johnson's fear that observers would witness his plea and sentencing, Powers agreed to file the Criminal Information late Friday afternoon and then proceed to arraignment and sentencing that same day.[5] Finally, Powers told Johnson's attorney that Powers would not issue a news release about the conviction.[6]

### B. The Press Release

At the time of Johnson's conviction, internal IRS guidelines provided that:

In the post-litigation actions, e.g., pleas of nolo contendere or guilty, or verdicts and sentencing, the DPAO [District Public Affairs Officer] will draft a news release based on information furnished by the investigating Special Agent. The investigating Special Agent will provide the DPAO with the taxpayer's age, occu-

a large part of the income tax due and owing by him to the United States for the calendar year 1975, by preparing and causing to be prepared, by signing and causing to be signed, and by mailing and causing to be mailed, in the Galveston Division of the Southern District of Texas a false and fraudulent income tax return, which was filed with the Internal Revenue Service, wherein he stated and represented that his taxable income for said calendar year was $53,589.00 and that the amount of tax due and owing thereon was the sum of $18,374.50, whereas, as he then and there well knew, his taxable income for 1975 was $59,784.18 upon which said taxable income he owed to the United States an income tax of $21,849.47. (Violation: Title 26, United States Code, Section 7201).

CARL WALKER, JR.
United States Attorney
By:
    JAMES L. POWERS
    Assistant United States Attorney
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

4. *See* Plaintiff's 28 May 1985 memorandum in support of partial summary judgment (docket item no. 74), p. 8 and supporting depositions.

5. *Id.*

6. *Id.* at p. 9 and supporting deposition.

pation, home address, and other pertinent facts. Immediatly after the legal action is completed, the investigating Special Agent will telephone the DPAO with additional information to complete the news release.

The DPAO will coordinate all CID [Criminal Investigation Division] releases with the Branch Chief, Criminal Investigation Division, and the prosecuting U.S. Attorney.

Austin District Director's 15 October 1980 Memorandum entitled "News Coverage Of Tax Prosecutions", p. 2–3. The special agent assigned to Johnson's criminal case—Robert Stone—accordingly reported Johnson's conviction to a public affairs officer in the Austin District Office. Based upon Stone's information,[7] that public affairs officer—Sally Sassen—then issued the following press release to 21 media outlets in the Galveston area:[8]

---

NEWS
RELEASE

For Release: IMMEDIATE

DEPARTMENT OF THE TREASURY
INTERNAL REVENUE SERVICE
FOR ADDITIONAL INFORMATION, CONTACT:
SALLY SASSEN
PUBLIC AFFAIRS OFFICER
300 EAST 8TH STREET
AUSTIN, TEXAS   78701
(512)  397-5315/5314
81-140-CID
APRIL 13, 1981

INSURANCE EXECUTIVE PLEADS
GUILTY IN TAX CASE

GALVESTON, TEXAS—In U.S. District Court here, Apr. 10, Elvis E. "Johnny" Johnson, 59, plead guilty to a charge of federal tax evasion. Judge Hugh Gibson sentenced Johnson, of 25 Adler Circle, to a six-month suspended prison term and one year supervised probation.

Johnson, an executive vice-president for the American National Insurance Corporation, was charged in a criminal information with claiming false business deductions and altering documents involving his 1974 and 1975 income tax returns.

In addition to the sentence, Johnson will be required to pay back taxes, plus penalties and interest.

END

---

Sassen, however, apparently failed to coordinate or even discuss issuing that release with Powers.[9] And although Stone and Powers had communicated about this case, it is unclear whether they ever discussed a press release.

Johnson's attorney immediately complained to the IRS about the release, specifying for example its inaccurate description of the charges against Johnson.[10] Sassen

thereupon had the media outlets told to not use the April 13 release.[11] Then on April 16 and 17 she had those 21 outlets informed that the April 13 release's second paragraph should be revised to state that the Criminal Information had charged Johnson with "willful evasion of federal tax by filing a false and fraudulent tax return for 1975" rather than with "claiming false business deductions and altering documents involving his 1974 and 1975 in-

7. *See e.g.,* Declaration of Sally Sassen attached to defendants' 20 September 1983 motion for dismissal/summary judgment ("Sassen Declaration"), ¶ 4.

8. *Id.* at ¶ 4.

9. *Id.*; Deposition of Robert I. White filed on 28 May 1985 in support of Johnson's summary

judgment motion (docket item no. 75) ("White Deposition"); p. 54–55.

10. Sassen Declaration, ¶ 5; *see also generally* White Deposition, p. 58–64, 66, 81–83.

11. Sassen Declaration, ¶ 5.

come tax returns." [12] (This Court hereafter refers to the April 13 release and its subsequent revision collectively as the "Release".)

### C.  This Civil Suit

On 6 April 1983 Johnson filed this civil suit against Sassen and other IRS personnel claiming that the Release disclosed tax return information in violation of 26 U.S.C. § 6103.[13] Stating inter alia that the Release had forced him to resign from American National, Johnson seeks approximately $54 million in actual and punitive damages under 26 U.S.C. § 7217.

In October 1983 Johnson amended his Complaint to include Federal Tort Claims Act actions against the United States. In August 1984 he amended to include five additional individual defendants.[14]

Presently pending are the defendants' motion for summary judgment/dismissal and Johnson's motion for partial summary judgment. Those motions raise the following seven issues:

1.  Did the Release constitute an unlawful disclosure of tax return information under 26 U.S.C. § 6103?

2.  Can individual defendants other than Sassen be held liable under 26 U.S.C. § 7217?

3.  Does the bad faith requirement in § 7217 preclude any individual defendant's liability?

4.  Does the statute of limitations bar suit against the five individual defendants added in 1984?

5.  What is the proper liquidated damage figure under § 7217(c)?

6.  Are punitive damages available against the individual defendants or the United States?

7.  Does this Court have jurisdiction over Johnson's claims against the United States?

---

**12.** *Id.* at ¶ 6.

**13.** The other named defendants were Robert Sawyer, Dale Braun, Robert Potrykus, and "persons presently unknown". Johnson has since dropped Potrykus from this suit.

## II.  SUMMARY JUDGMENT PRINCIPLES

Although summary judgment is an excellent device by which district courts may expeditiously dispose of issues for which a trial would be fruitless, district courts may grant it only when the moving party has established his right to judgment with such clarity that the nonmoving party cannot prevail under any discernable circumstance. *E.g., Jones v. Western Geophysical,* 669 F.2d 280, 283 (5th Cir.1982). The unlikelihood of the nonmover's prevailing at trial is irrelevant since the trial court's duty under Fed.R.Civ.P. 56 is not to *resolve* factual issues, but rather to simply decide whether there is a factual issue for trial. *Id.*

Summary judgment on an issue is therefore appropriate only if it appears from the pleadings, depositions, and affidavits—considered in the light most favorable to the nonmoving party—that there is no genuine dispute as to any material fact and that the mover is entitled to judgment as a matter of law. *E.g., Galindo v. Precision American,* 754 F.2d 1212, 1216 (5th Cir.1985); *Albertson v. T.J. Stevenson & Co.,* 749 F.2d 223, 228 (5th Cir.1984).

With those principles in mind, this Court turns to the seven issues on which the parties seek summary judgment.

## III.  A "DISCLOSURE" UNDER § 6103

■ Section 6103 of the Internal Revenue Code (the "Code") provides that

[r]eturns and return information shall be confidential, and except as authorized by this title[,] no officer or employee of the United States ... shall disclose any return or return information obtained by him in any manner in connection with his service as such an officer or employee or

---

**14.** Those additional defendants are Robert McKeever, Michael Orth, Robert Stone, William Kurak, and Charles Peterson.

otherwise or under the provisions of this section.

26 U.S.C. § 6103(a).

The term "return information" is a broad one encompassing any information gathered by the IRS regarding a person's tax liability. *Dowd v. Calabrese,* 101 F.R.D. 427, 438 (D.D.C.1984). More specifically, the Code defines the term "return information" to include

> a taxpayer's identity, the nature, source, or amount of his income, ... deductions, ... liabilities, ... tax liability, ... deficiencies, ... whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability ... of any person ... for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense....

26 U.S.C. § 6103(b)(2)(A).

Johnson claims that the Release's disclosure of the following five items violated § 6103:

(1) his age,

(2) his address,

(3) the suspicion that he had altered documents and claimed false business deductions concerning his 1974 and 1975 returns,

(4) his position at American National being executive vice-president, and

(5) his being required to pay back taxes, penalties, and interest.

Second Amended Complaint, p. 5–6. Those five items constituted part of the data received, recorded, or collected by the IRS with respect to Johnson's return and the determination of his liability for an offense.[15] His residential address was part of his "identity". 26 U.S.C. § 6103(b)(6). The statement about Johnson's having to pay back taxes, penalties, and interest revealed part of his liabilities. The statement about his employer and title revealed part of the nature and source of his income. And although the statement about altered documents, false deductions, and 1974 evasion mistakenly characterized the Criminal Information to which Johnson pled, it accurately revealed the investigation to which Johnson was subjected. Given observations such as those, this Court must conclude that the Release contained "return information" under § 6103.

The term "disclosure" means "the making known to any person in any manner whatever a return or return information." 26 U.S.C. § 6103(b)(8). Given that expansive definition, this Court must hold that the Release "disclosed" the return information.

Issuing the Release therefore violated § 6103 unless some exception to the general rule against disclosure applies. 26 U.S.C. § 6103(a). Unable to find a statutory exception,[16] the defendants ask this Court to, in essence, create a judicial one.

---

**15.** Those items came from Stone. Sassen Declaration, ¶ 4. And Stone collected his information from his criminal investigation of Johnson. Stone Deposition, p. 39.

**16.** There is a statutory exception regarding the use of return information in court proceedings. That exception provides that

> A return or return information may be disclosed in a Federal ... proceeding pertaining to tax administration, but only—
>
> (A) [if] the taxpayer is a party to the proceeding, or the proceeding arose out of, or in connection with, determining the taxpayer's civil or criminal liability, or the collection of such civil liability, in respect of any tax imposed under this title;

> (B) if the treatment of an item reflected on such return is directly related to the resolution of an issue in the proceeding;
>
> (C) if such return or return information directly relates to a transactional relationship between a person who is a party to the proceeding and the taxpayer which directly affects the resolution of an issue in the proceeding; or
>
> (D) to the extent required by order of a court pursuant to section 3500 of title 18, United States Code, or rule 16 of the Federal Rules of Criminal Procedure, such court being authorized in the issuance of such order to give due consideration to congressional policy favoring the confidentiality of returns and return information as set forth in this title.

The defendants' argument begins with the recognition that Congress enacted § 6103 to protect taxpayers' reasonable expectation that information submitted to the IRS would remain confidential.[17] Defendants then maintain that Johnson had no reasonable expectation of privacy concerning the items disclosed in the Release because those items were incidental to information already in the public record of Johnson's criminal prosecution. Johnson thus lacking a reasonable privacy expectation to protect, the defendants conclude that Congress would not consider the Release's issuance a violation of § 6103.

Some courts have implied that a disclosure technically transgressing § 6103 should not be considered a "violation" if that disclosure does not violate § 6103's purpose and Congress would not have intended that disclosure to be illegal. *See In re Grand Jury Investigation,* 688 F.2d 1068, 1071 (6th Cir.1982); *Cooper v. IRS,* 450 F.Supp. 752 (D.D.C.1977). This Court, however, believes that Congress made the language of § 6103 quite clear: any disclosure of return information is illegal "except as authorized *by this title."* 26 U.S.C. § 6103(a) (emphasis added). The Senate

Committee which wrote § 6103 explained that it

> reviewed each of the areas in which returns and return information are now subject to disclosure.
>
> With respect to each of these areas, the committee has tried to balance the particular office or agency's need for the information involved with the citizen's right to privacy and the related impact of the disclosure upon the continuation of compliance with our country's voluntary assessment system.... [T]he committee felt that returns and return information should generally be treated as confidential and not subject to disclosure *except in those limited situations delineated in* the newly amended *section 6103* where the committee decided that disclosure was warranted.

Senate Report, No. 94–938, *reprinted in* 1976 U.S. Code Cong. & Ad. News 2897, 3439, 3747 ("Senate Report") (emphasis added); *see also* House Conference Report No. 94–1515, *reprinted in* 1976 U.S. Code Cong. & Ad. News 4118, 4180 ("The Senate amendment provides that returns and return information are ... not subject to disclosure *except as specifically provided*

---

However, such return or return information shall not be disclosed as provided in subparagraph (A), (B), or (C) if the Secretary determines that such disclosure could identify a confidential informant or seriously impair a civil or criminal tax investigation.
26 U.S.C. § 6103(h)(4). That exception, however, cannot be stretched to situations such as Johnson's where the IRS disclosed the information to the public. *E.g., Chamberlain v. Kurtz,* 589 F.2d 827, 838 (5th Cir.) *cert. denied,* 444 U.S. 842, 100 S.Ct. 82, 62 L.Ed.2d 54 (1979).

**17.** Explaining the reasons for enacting § 6103, the legislative history states:

Questions have been raised and substantial controversy created as to whether the present extent of actual and potential disclosure of return and return information ... for nontax purposes breaches a reasonable expectation of privacy on the part of the American citizen with respect to such information. This, in turn, has raised the question of whether the public's reaction to this possible abuse of privacy would seriously impair the effectiveness of our country's very successful voluntary assessment system which is the mainstay of the Federal tax system.

In a more general sense, questions have been raised with respect to whether tax returns and tax information should be used for any purposes other than tax administration.
Senate Report No. 94–938, *reprinted in* 1976 U.S.Code Cong. & Ad.News 3439, 3747, *see also* p. 3778 (damages recoverable from § 6103 violation relate to the invasion of taxpayers's privacy). More generally, the Seventh Circuit has noted when construing the scope of § 6103 that:

Section 6103 was enacted in response to the use of tax return information for political purposes revealed during Watergate.... In addition to protecting tax returns and return information from misuse for partisan political purposes, the Act ensures that the public, as well as various government entities, should not have wholesale, unregulated access to tax information ... and that federal tax administration should not be seriously impaired by the disclosure of return information.... Thus, the Act encourages voluntary compliance with the tax assessment system by assuring taxpayers of the confidentiality of their returns....

*Rueckert v. IRS,* 775 F.2d 208, 210 (7th Cir.1985) (citations omitted).

*by statute"*) and 4186 (conference agreement to follow that Senate amendment after modifying those specific statutory exceptions). In light of that explicit statutory language and legislative history, this Court concludes that it cannot judicially carve any additional exceptions to § 6103's general ban against disclosures. *See also Rodgers v. Hyatt,* 697 F.2d 899 (10th Cir. 1983); *Olsen v. Egger,* 594 F.Supp. 644, 647 (S.D.N.Y.1984); *Dowd,* 101 F.R.D. at 428–29; *cf. Garity v. U.S.,* 81–2 U.S.T.C. ¶ 9599 at p. 88,006–008 (E.D.Mich.1980).

Since no statutory provision exempts the Release from the general ban against disclosures, this Court concludes that issuing the Release violated § 6103.[18]

## IV. LIABILITY OF INDIVIDUAL DEFENDANTS OTHER THAN SASSEN UNDER § 7217

■ The civil liability provision applicable to this case [19] states:

> Whenever any person knowingly, or by reason of negligence, discloses a return or return information (as defined in section 6103(b)) with respect to a taxpayer in violation of the provisions of section 6103, such taxpayer may bring a civil action for damages against such person. . . .

26 U.S.C. § 7217(a). Arguing that the issuer of the Release—Sassen—is the only person who could have "disclosed" information in violation of § 6103, defendants argue that only Sassen can be held liable under § 7217.

Although some cases suggest that § 7217 covers only that specific individual who personally divulged the return information,[20] this Court is not sure that Congress intended § 7217 to apply so narrow-

ly. The Senate Finance Committee drafted § 7217 because it had concluded that

> the present provisions designed to enforce the rules against the improper use or disclosure of returns and return information are inadequate. ... [I]n order to redress any injury sustained and to aid in the enforcement of the confidentiality rules, a civil action for damages should be provided to any person injured by a willful or negligent disclosure in violation of [§ 6103].

Senate Report, p. 3777. That Committee then went on to broadly define a "disclosure" as the making known of return information "in any manner whatever". *Id.* at 3749; *accord* 26 U.S.C. § 6103(b)(8). Given that sweeping definition and § 7217's underlying purpose of enforcing the nondisclosure rules, this Court cannot at this juncture state as a clear matter of law that Sassen is the only person sufficiently connected to issuing the Release to be held liable under § 7217.

Since resolution of the other defendants' liability under § 7217 requires a further factual development of their involvement in the Release's issuance, summary judgment on this issue is inappropriate.

## V. INDIVIDUAL DEFENDANTS AND GOOD FAITH

■ Section 7217 provides that "[n]o liability shall arise under this section with respect to any disclosure which results from a good faith, but erroneous, interpretation of section 6103." 26 U.S.C. 7217(b). Bad faith on the individual defendants' part is accordingly an element which Johnson must prove to establish his § 7217 claim. *Davidson v. Brady,* 732 F.2d 552, 553 (6th Cir.1984).

---

18. This Court recognizes that its strictly enforcing the comprehensive regulation of § 6103 greatly hampers the government's ability to issue press releases concerning the prosecution of tax evaders. If that result is poor public policy, it is for Congress—not the Courts—to amend § 6103 to allow the issuing of such releases.

19. Section 7217 of the Code governs disclosers made after 31 December 1976 (*see* P.L. No.

94–455 § 1202(i)) and before 4 September 1982 (*see* P.L. No. 97–248 § 357(c)). Section 7217 therefore applies to the April 1981 Release.

20. *Rueckert v. Gore,* 587 F.Supp. 1238, 1240 (N.D.Ill.1984) *aff'd.* 775 F.2d 208 (1985); *Timmerman v. Swenson,* 79–2 U.S.T.C. ¶ 9588 at p. 88,141 (D.Minn.1979).

Good faith under § 7217 exists if the disclosing defendant's "conduct [did] not violate clearly established statutory ... rights of which a reasonable person would have known." *Rueckert,* 587 F.Supp. at 1242; *see also Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Applying that standard requires this Court to determine not merely what § 6103 proscribes, but whether that law was clearly established at the time of the Release's issuance. *E.g., Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738.

> If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to "know" that the law forbade conduct not previously identified as unlawful.... If the law was clearly established, the [good faith claim] ordinarily should fail, since a reasonably competent public official should know the law governing his conduct. Nevertheless, if the official pleading [good faith] claims extraordinary circumstances and can prove that he neither knew nor should have known of the relevant legal standard, the [claim] should be sustained.

*Harlow,* 457 U.S. at 818–19, 102 S.Ct. at 2738–39 (footnotes omitted).

Issuing the Release violated the clear proscriptions of § 6103.[21] Following the *Harlow* Court's advice, this Court accordingly concludes that a reasonably competent IRS official should have known that that disclosure was illegal. Although the defendants submit evidence of extraordinary circumstances in this situation which might justify a finding of good faith,[22] other factors such as Sassen's failure to contact the prosecuting AUSA as the IRS guidelines require support a finding of bad faith. The summary judgment evidence therefore does not persuade this Court that the defendants neither knew nor should

have known that issuing the Release violated § 6103. This Court must accordingly deny summary judgment on this issue.

## VI. STATUTE OF LIMITATIONS

■ The Code provides that

> [a]n action to enforce any liability created under [§ 7217] may be brought ... within 2 years from the date on which the cause of action arises or at any time within 2 years after discovery by the plaintiff of the unauthorized disclosure.

26 U.S.C. § 7217(d). Johnson timely filed his Original Complaint within that two year period. But he did not amend that Complaint to add McKeever, Orth, Stone, Kurak, and Peterson as defendants until more than three years after the Release's issuance. Since those five defendants accordingly invoke the statute of limitations, this Court examines whether Johnson's amendment satisfies the three prerequisites for relation-back under Fed.R.Civ.P. 15(c).

### A. Transaction Or Occurrence

The first prerequisite under Rule 15(c) is satisfied if the claims asserted against the five new defendants arise out of the conduct, transaction, or occurrence set forth or attempted to be set forth in Johnson's timely Complaint. *E.g., Kirk v. Cronvich,* 629 F.2d 404, 407 (5th Cir.1980); *Ramirez v. Burr,* 607 F.Supp. 170, 173–74 (S.D.Tex. 1984). Since the claims asserted in the Original and Amended Complaints all arise out of the April 13 press release's issuance and later revision, the first prerequisite of relation-back under Rule 15(c) is satisfied.

### B. Sufficient Notice

The second prerequisite is satisfied if the five defendants received, before the two-year limitation period's expiration, sufficient notice of this lawsuit so that they will

---

**21.** *See supra* Part III of this opinion.

**22.** For example, defendants' note that (1) in issuing the Release, Sassen merely followed long standing IRS practice and her superior's expressed direction, and (2) despite that long standing press release practice and the Code's providing since 1977 for civil liability concerning disclosures in violation of § 6103, no case can be found holding that issuing a press release violates § 6103.

not be prejudiced in defending this action on the merits. *E.g. Kirk,* 629 F.2d at 407; *Ramirez,* 607 F.Supp. at 173–74. That prerequisite does not, however, require the new defendants to have had *actual* notice of this suit's timely filing. *Kirk,* 629 F.2d at 407; *Ramirez,* 607 F.Supp. at 173.

For example, adequate notice can be imputed to the five new defendants through their attorney since that attorney also represents other defendants whom Johnson timely sued. *Kirk,* 629 F.2d at 407–08; *Ramirez,* 607 F.Supp. at 173–74; *Fludd v. U.S. Secret Service,* 102 F.R.D. 803, 805–06 (D.D.C.1984). Since the five new defendants are all IRS employees, the second prerequisite is also satisfied by Johnson's having timely served Acting IRS District Director Braun, IRS Criminal Investigation Division Chief Sawyer, and the U.S. Attorney. *See* Fed.R.Civ.P. 15(c);[23] *Kirk,* 629 F.2d at 407 (since serving an agent provides the principle sufficient notice for relation-back under Rule 15(c), timely serving a deputy sheriff provided adequate notice to the sheriff); *Ramirez,* 607 F.Supp. at 174 (for the same reason, timely serving a government council's executive director provided adequate notice to that council's board members); *Fludd,* 102 F.R.D. at 805 & n. 4 (timely serving the U.S. Attorney provided adequate notice under Rule 15(c) to individual secret service agents).

### C. Sufficient Knowledge

The third prerequisite is satisfied if the five new defendants knew or should have know that, but for a mistake concerning their proper identity, this action would have originally included them. *E.g. Kirk,* 629 F.2d at 407; *Ramirez,* 607 F.Supp. at 173–74. Since Rule 15(c) operates to avoid the impact of the statute of limitations, this Court must examine the sufficiency of the five new defendants' knowledge in light of that statute's policy objectives—e.g. avoiding undue surprise, permitting timely investigation, and allowing the collection of evidence while it is fresh. *Ramirez,* 607 F.Supp. at 174; *see also Kirk,* 629 F.2d at 408 (making same observation about the second "sufficient notice" prerequisite).

Loss of evidence or undue surprise, however, should not prejudice the five new defendants Johnson sues—for the other defendant IRS employees and United States government, who are represented by the same attorney as the five new defendants, have surely taken steps to adequately investigate and defend Johnson's allegations concerning the Release. *See Ramirez,* 607 F.Supp. at 174. Johnson's having timely served the U.S. Attorney further satisfies this knowledge requirement. Fed.R.Civ.P. 15(c);[24] *Fludd,* 102 F.R.D. at 805 & n. 4. This Court therefore concludes that the five new defendants had sufficient knowledge to satisfy the third prerequisite of Rule 15(c).

### D. Conclusion

Since the amendment adding the five new defendants satisfies the three prerequisites of Rule 15(c), that amendment relates back to the timely filing of Johnson's Original Complaint. The statute of limitations accordingly provides those five defendants no refuge.

## VII. DAMAGES

### A. Liquidated Damages

■ Section 7217 provides for a minimum actual damage amount of $1,000 "with respect to each instance of [an] unau-

---

**23.** The last paragraph of Rule 15(c) provides: The delivery or mailing of process to the United States Attorney ... or an agency or officer who would have been a proper defendant if named, satisfies the requirement of clauses (1) and (2) hereof with respect to the United States or any agency or officer thereof to be brought into the action as a defendant. It is those clauses (1) and (2) which require that the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.

**24.** *See id.*

thorized disclosure" of a return or return information. 26 U.S.C. § 7217(c)(1). In applying that clause to this case, the parties dispute whether $1,000 should be multiplied by the number of original press releases Sassen drafted (one), the number of media outlets that received a copy of the Release (twenty-one), or the number of persons at those outlets who actually read a copy of the April 13 release or its revision (over fifty).

Congress enacted the actual damage remedy of § 7217 in order to compensate injured taxpayers and penalized negligent violators of § 6103.[25] Recognizing the difficulty taxpayers might face establishing such actual damages in monetary terms, Congress included the $1,000 liquidated damage clause. Senate Report, p. 3778. The minimum damage amount provided by that clause accordingly serves to prevent a taxpayer's inability to prove actual damages from defeating the dual penal and compensatory purposes of § 7217.

Construing the liquidated damage clause to provide only $1,000 per press release *drafted* by the IRS would poorly serve the compensatory purpose of § 7217—for the amount of damage inflicted upon a taxpayer stems less directly from the release's initial preparation than from its subsequent distribution. On the other hand, construing the clause to provide $1,000 per person who eventually read the release would poorly fit the penal purpose of § 7217—for the degree of a violator's punishment should preferably turn upon a factor within the violator's knowledge or control (e.g., the number of media outlets receiving the release) rather than a factor outside her knowledge or control (e.g., the number of employees each of those outlets happens to allow to read the release). This Court accordingly concludes that the penal and compensatory purposes of § 7217 are best accomodated by construing the liquidated damage clause to provide $1,000 per media outlet receiving a copy of the Release.[26]

Since the IRS distributed the Release to 21 media outlets, this Court rules that application of the liquidated damage clause would produce a sum of $21,000.

### B. Punitive Damages

■ Section 7217 provides for punitive damages against individuals "in the case of a willful disclosure or a disclosure which is the result of gross negligence." 26 U.S.C. § 7217(c)(1). Although the individual defendants' summary judgment evidence shows that their involvement in the Release's issuance was not an intentional violation of § 6103, their evidence fails to establish beyond factual dispute that their alleged involvement was not grossly negli-

---

**25.** The legislative history explains that the committee drafting the new confidentiality rules of § 6103 "decided that in order to redress any injury sustained *and* to aid in the enforcement of the confidentiality rules, a civil action for damages should be provided to any person injured by a ... negligent disclosure in violation of [§ 6103]." Senate Report, p. 3777 (emphasis added). The damages allowed in such cases of negligent disclosures are actual damages and costs. 26 U.S.C. § 7217(c).

**26.** The liquidated damage computation in the following two cases also supports that conclusion.

*Rorex v. Traynor,* 771 F.2d 383 (8th Cir.1985), dealt with the IRS's having served a single notice of levy on a husband and wife's bank account. That notice made multiple disclosures in violation of § 6103. The court awarded each plaintiff liquidated damages of $1,000—apparently construing the liquidated damage clause to provide $1,000 per bank receiving a levy notice

rather than $1,000 per bank employee reading that notice. *Id.* at 387–88.

*Mid-South Music v. U.S.,* 85–2 U.S.T.C. ¶ 9782 (M.D.Tenn.1985) [Available on WESTLAW, DCTU database], dealt with the IRS's having mailed a form letter to 174 tax shelter investors. That form letter made multiple disclosures about the plaintiff in violation of § 6103. Finding plaintiff's actual damage evidence insufficient, the court awarded damages of $174,000—apparently applying the liquidated damage clause to provide $1,000 per household or business receiving a letter rather than $1,000 per person eventually reading those letters. *Id.* at p. 90,152–53.

Neither case, however, directly discussed the liquidated damage clause's application. This Court therefore refers to their results not as authority, but rather merely as examples of prior awards consistent with this Court's construction of the liquidated damage clause.

gent.[27] This Court must therefore deny the individual defendants' motion for summary judgment on the punitive damage claims.

■ As to the defendant United States, § 7217 provides Johnson no cause of action at all. *E.g., Lutz v. U.S.*, 82–1 U.S.T.C. ¶ 9274 at p. 83,652–53 (S.D.Tex.1982); *Heritage Hills Fellowship v. Plouff*, 555 F.Supp. 1290, 1294 (E.D.Mich.1983); *Haggard v. Carter*, 82–1 U.S.T.C. ¶ 9378 at p. 84,038 (N.D.Ill.1982) [Available on WESTLAW, DCTU database]. His causes of action against the United States therefore stem solely from the Federal Tort Claims Act ("FTCA"). Since the FTCA bars punitive damages, 28 U.S.C. § 2674, this Court must rule that Johnson is not entitled to punitive damages against the United States.

## VIII. FEDERAL TORT CLAIMS ACT

■ The FTCA constitutes a general waiver of the federal government's sovereign immunity relating to tort claims. *See* 28 U.S.C. § 2674. Congress limited that waiver, however, by granting U.S. district courts exclusive jurisdiction over such tort claims, 26 U.S.C. § 1346(b), and then restricting the scope of that jurisdiction, *see* 26 U.S.C. §§ 1346(b), 2680. Invoking three of those jurisdictional limitations, the government argues that this Court has no subject matter jurisdiction over Johnson's FTCA claims.

### A. State Law Cause Of Action

Under the FTCA, this Court has exclusive jurisdiction over

> civil actions on claims against the United States ... for injury or loss ... caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances

where the United States, *if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.*

28 U.S.C. § 1346(b) (emphasis added). Johnson must therefore base his FTCA claim on a *state law* cause of action. *E.g., Standefer v. U.S.*, 511 F.2d 101, 104–05 (5th Cir.1975) *overruled in other part, Culver v. Slater Boat*, 688 F.2d 280 (1982) and 722 F.2d 114 (1983) (en banc); *Edwards v. U.S.*, 519 F.2d 1137, 1139 (5th Cir.1975) *cert. denied* 425 U.S. 972, 96 S.Ct. 2170, 48 L.Ed.2d 795 (1976); *Boe v. U.S.*, 352 F.2d 551, 552 (8th Cir.1965); *see generally U.S. v. Muniz*, 374 U.S. 150, 152, 159–66 & n. 27, 83 S.Ct. 1850, 1852, 1856–59 & n. 27, 10 L.Ed.2d 805 (1963).

This Court accordingly has no jurisdiction to hear tort claims against the United States based on the violation of *federal* law. *U.S. v. Smith*, 324 F.2d 622, 625 (5th Cir.1963); *Baker v. F & F Investment*, 489 F.2d 829, 835 (7th Cir.1973); *Zeller v. U.S.*, 467 F.Supp. 487, 504–05 (E.D.N.Y.1979); *Mercer v. U.S.*, 460 F.Supp. 329, 330–31 (S.D.Ohio 1978). For example, in *Zeller* an Interstate Commerce Commission employee had issued a press release disclosing certain information about the plaintiff. 467 F.Supp. at 491–92. The court held that even if that release violated the nondisclosure provisions of the federal Privacy Act, that illegal disclosure provided plaintiff no claim under the FTCA absent the violation of some New York State law or duty. *Id.* at 504–05. Similarly here, Johnson cannot base his FTCA claims simply upon the violation of § 6103.

Johnson, however, also alleges Texas state law causes of action for negligent supervision of employees and breach of a confidential relationship.[28] Since Johnson

---

27. *Cf. supra* Part V of this opinion rejecting defendants' contention that their good faith was beyond factual dispute.

28. Johnson also makes a claim regarding the April 13 release's inaccurate description of the Criminal Information filed against him. Indeed, at one point he states that his whole case boils down to whether the publication of the

Release resulted from willful or grossly negligent attempts by the IRS to libel him. Johnson's 28 May 1985 supporting memorandum (docket item no. 74), p. 16. This Court cannot consider such claims, however, since the FTCA precludes "[a]ny claim arising out of ... libel, slander, [or] misrepresentation." 28 U.S.C. § 2680(h).

therefore bases his FTCA claims on state law causes of action, he at this juncture satisfies the jurisdictional prerequisite of § 1346(b).[29]

### B. Discretionary Function Exception

■ This Court has no subject matter jurisdiction over FTCA claims which are "based upon the exercise or performance [of] ... a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The seminal case construing that exception stated that

> the "discretionary function or duty" that cannot form a basis for suit under the Tort Claims Act includes more than the initiation of programs and activities. It also includes determinations made by executives or administrators in establishing plans, specifications or schedules of operations. Where there is room for policy judgment and decision there is discretion. It necessarily follows that acts of subordinates in carrying out the operations of government in accordance with official directions cannot be actionable. If it were not so, the protection of section 2680(a) would fail at the time it would be needed, that is, when a subordinate performs or fails to perform a causal step, each action or nonaction being directed by the superior, exercising, perhaps abusing, discretion.

*Dalehite v. U.S.*, 346 U.S. 15, 35–36, 73 S.Ct. 956, 967–68, 97 L.Ed. 1427 (1953); *accord U.S. v. Varig Airlines*, 467 U.S. 797, 811, 813 n. 10, 104 S.Ct. 2755, 2764, 2765 n. 10, 81 L.Ed.2d 660, 673, 674 n. 10 (1984).

The Fifth Circuit has cautioned, however, that

> the fact that the negligence may have occurred in connection with a discretion-

ary function does not make the negligent act a discretionary function. Nor does the discretionary character of the government's initial undertakings govern whether a duty can arise out of those undertakings..... Discretionary decision-making, then, is accompanied by non-discretionary acts of execution....

*Payton v. U.S.*, 679 F.2d 475, 480 (5th Cir.1982) (en banc) (citation omitted).

Such vague guidelines illustrate that it is impossible to define, as a matter of law, the exact contours of the discretionary function exception. *See e.g., Varig*, 467 U.S. at 813, 104 S.Ct. at 2765, 81 L.Ed.2d at 674. To determine that exception's applicability this Court must distinguish, as a matter of fact, whether issuing the Release entailed decisions made at the planning level (thus discretionary and exempt) or at the operational or ministerial level (thus nondiscretionary and nonexempt). *Id.* at 479–80. The government, however, submits insufficient summary judgment evidence to establish beyond factual dispute the level at which the decisions concerning the Release's contents and issuance were made. This Court must accordingly deny the government summary judgment on the discretionary function exception.

### C. Tax Exception

■ This Court has no jurisdiction over FTCA claims which "aris[e] in respect of the assessment or collection of any tax...." 28 U.S.C. § 2680(c). That exception "preclude[s] suits for damages arising out of the allegedly tortious activities of IRS agents when those activities were in any way related to the agents' official duties." *Capozzoli v. Tracey*, 663 F.2d 654, 658 (5th Cir.1981). It does not, however, insulate the government from tort liability for all transgressions committed by IRS employees. *Id.* Thus § 2680(c) does

**29.** Section 6103 comprehensively regulates the use and dissemination of tax returns and return information. *American Friends Service Cmte. v. Webster*, 720 F.2d 29, 70 (D.C.Cir.1983). Of some concern to this Court is whether the detail of that regulatory scheme, or simply the federal need for a uniform disclosure standard to which

the IRS should be held, works to preempt the Texas state law causes of action Johnson asserts. Since the litigants have not yet raised that issue, however, this Court reserves judgment on that issue until the parties properly brief and present it to this Court.

not apply "[w]here an IRS employee commits a tort wholly unrelated to his or her official duties of assessing or collecting taxes." *Id.*

The summary judgment evidence fails to establish beyond factual dispute the official duties of the IRS employees whose conduct is questioned here, how those duties related to their involvement on the Release's issuance, or how those duties entailed the assessment or collection of taxes. Thus unable to sufficiently resolve those issues at this juncture, this Court must deny the government summary judgment on the tax exception.

## IX. CONCLUSION

For the reasons explained above, this Court ORDERS, ADJUDGES, and DECREES that:

1. That part of Johnson's summary judgment motion which maintains that the Release constituted a disclosure in violation of 26 U.S.C. § 6103 is GRANTED.

2. That part of defendants' summary judgment motion which maintains that no individual defendant other than Sassen can be held liable under 26 U.S.C. § 7217 is DENIED.

3. That part of defendants' summary judgment motion which maintains that the individual defendants evidenced sufficient good faith to preclude their liability is DENIED.

4. That part of defendants' summary judgment motion which maintains that the statute of limitations bars suit against McKeever, Orth, Stone, Kurak, and Peterson is DENIED.

5. That part of defendants' summary judgment motion which maintains that application of the liquidated damage clause in 26 U.S.C. § 7217(c) to this case would produce a sum of $21,000 is GRANTED.

6. That part of defendants' summary judgment motion which maintains that punitive damages are not available against the individual defendants is DENIED.

7. That part of defendants' summary judgment motion which maintains that punitive damages are not available against the United States is GRANTED.

8. That part of defendants' summary judgment motion which maintains that this Court has no jurisdiction over the FTCA claims is DENIED.

9. All other parts of the parties' summary judgment motions are DENIED.