**Ernest P. LAMPERT; Delphine Lampert; Robert J. Burns; John P. Thorne, Plaintiffs/Appellants,**

**v.**

**UNITED STATES of America, Defendant/Appellee.**

**Manual PEINADO, Plaintiff/Appellant,**

**v.**

**UNITED STATES of America, Defendant/Appellee.**

**Lawrence J. FIGUR, Plaintiff/Appellant,**

**v.**

**UNITED STATES of America, Defendant/Appellee.**

**Nos. 87–2022, 87–2395 and 87–2396.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 12, 1988.

Decided Aug. 12, 1988.

Montie S. Day and Jon R. Vaught of Day Law Corp., Oakland, Cal., for plaintiffs-appellants.

William S. Rose, Jr., Asst. Atty. Gen., and Mary F. Clark, Dept. of Justice, Washington, D.C., for defendant-appellee.

Before SKOPIL and FARRIS,* Circuit Judges, and BURNS,** District Judge.

SKOPIL, Circuit Judge:

We must decide in these consolidated appeals whether press releases by government officials, relating to public judicial proceedings, constitute unauthorized disclosures of "tax return information" in violation of 26 U.S.C. § 6103 (1982) of the Internal Revenue Code. We agree with the district courts that the press releases here do not violate section 6103. We need not reach the government's alternative theory that the "good faith" exception of 26 U.S.C. § 7431 (1982) would nevertheless preclude liability in these cases.

## FACTS AND PRIOR PROCEEDINGS

There are no disputed facts in these cases. In *Figur*, the U.S. Attorney's Office issued a press release summarizing tax evasion charges against Figur. The same U.S. Attorney issued two press releases in *Peinado*, one announcing that Peinado pleaded guilty to tax evasion and another when he was sentenced for the crime. In *Lampert*, the government filed an action seeking a permanent injunction against the defendants' promotion and sale of abusive tax shelters. The U.S. Attorney and the Internal Revenue Service issued separate press releases relating the filing of that action and the investigation of the defendants.

In each instance, the taxpayer brought an action alleging that the respective press release was an unauthorized disclosures of "return information" as defined by 26 U.S.C. § 6103. The government responded that (1) a press release based solely on information contained in a public court record is not an unauthorized disclosure; and (2) even if the disclosure was unauthorized, the government acted in good faith, thereby precluding liability in these cases.

The government prevailed on motions for summary judgments. In *Figur*, the district court held that a "governmental press release disseminating return information contained in the public record does not violate § 6103." *Figur v. United States*, 662 F.Supp. 515, 518 (N.D.Cal.1987). Similarly, the court in *Peinado* concluded that "[i]t was not the intent of Congress in enacting § 6103 to penalize the government for issuing a press release repeating information that is already a matter of public record. A press release that simply announces or broadcasts what is already known from court proceedings is not a disclosure as that term is defined in § 6103." *Peinado v. United States*, 669 F.Supp. 953, 954 (N.D.Cal.1987). Finally, the trial judge in *Lampert* stated that a violation had occurred but held that the government was protected by its good faith interpretation of section 6103. *Lampert v. United States*, unpublished opinion, slip op. 5–11 (N.D.Cal. April 8, 1987).

## DISCUSSION

Section 6103(a), 26 U.S.C. § 6103(a), of the Internal Revenue Code "lays down a general rule that 'returns' and 'return information' ... shall be confidential." *Church of Scientology of California v. I.R.S.*, —— U.S. ——, 108 S.Ct. 271, 272, 98 L.Ed.2d 228 (1987). The statute is designed to protect the flow of information between taxpayers and the Internal Revenue Service by controlling the disclosure of tax information by government employees. *See Stokwitz v. United States*, 831 F.2d 893, 894 (9th Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 1592, 99 L.Ed.2d 907 (1988). The Act creates a private cause of action by taxpayers against the United States and provides for damages. 26 U.S.C. § 7431(c).

There is no dispute here that the press releases disclosed "return information" as defined by section 6103(b). *See, e.g., Barrett v. United States*, 795 F.2d 446, 449

---

* Judge Anderson, an original member of this panel, died shortly after oral argument. Judge Farris was drawn to replace him.

** The Honorable James M. Burns, United States District Judge for the District of Oregon, sitting by designation.

(5th Cir.1986) (statute broadly defines term to include taxpayer's identity, the nature, source or amount of income, and whether there is an investigation). There is also no dispute that 26 U.S.C. § 6103(h)(4)(A) authorizes the disclosure of return information in judicial proceedings involving a taxpayer's civil or criminal tax liability. The government argues that once such information is lawfully disclosed in judicial proceedings, it loses its confidentiality and is no longer subject to the restrictions of section 6103. *See Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 597, 98 S.Ct. 1306, 1311, 55 L.Ed.2d 570 (1978) (court proceedings are public record).

Taxpayers argue, however that section 6103(h)(4)(A) on its face applies only to disclosures *in* judicial proceedings. The disclosures at issue occurred not in court but to the press through the issuance of press releases. The taxpayers therefore contend that while the contested information could lawfully be disclosed in court, the act forecloses further dissemination of even "public record" return information.[1]

In *Rodgers v. Hyatt,* 697 F.2d 899, 904 (10th Cir.1983), the court accepted the taxpayers' position. There an IRS agent disclosed to others certain return information that had been the subject of his testimony in a prior court proceeding. The court held that "[e]ven assuming the loss of confidentiality in the content of the statements ... the [later] disclosure was clearly unauthorized." *Id.* at 906; *see also Malis v. United States,* 87–1 U.S.T.C. ¶ 9212 (C.D.Cal. 1986) [available on WESTLAW, 1986 WL 15721] (citing *Rodgers* for proposition that disclosure of return information that has been made public does not preclude liability for later unauthorized disclosures of the identical return information).

Similarly, *Johnson v. Sawyer,* 640 F.Supp. 1126 (S.D.Tex.1986), supports the taxpayers' argument. There the IRS issued a press release following Johnson's plea of tax evasion. The government argued that there was no violation of section 6103 because Johnson had no reasonable expectation of privacy concerning information already disclosed in the public record of his criminal prosecution. *Id.* at 1132. The court rejected that argument, concluding that "Congress made the language of § 6103 quite clear: any disclosure of return information is illegal 'except as authorized....'" *Id.* The court, citing *Rodgers,* refused to create an additional exception to section 6103. *Id.* at 1133. In so doing, the court recognized that by strictly enforcing section 6103, the government's ability to publicize the prosecution of tax evaders is greatly hampered. *Id.* at 1133 n. 18. Nevertheless, "[i]f that result is poor public policy, it is for Congress—not the Courts—to amend § 6103 to allow the issuing of such releases." *Id.*

In contrast to *Rodgers* and *Johnson,* several district courts have concluded that once return information is disclosed in court, such information is no longer confidential, the taxpayer loses any privacy interests in that information, and there is no violation of section 6103 for subsequent disclosures. *See Thomas v. United States,* 671 F.Supp. 15, 16 (E.D.Wis.1987) (IRS press release summarizing the results of tax court proceedings is not unlawful disclosure); *United States v. Posner,* 594 F.Supp. 930, 936 (S.D.Fla.1984) (no right of privacy for information that has already been placed in public court file); *Cooper v. I.R.S.,* 450 F.Supp. 752, 755 (D.D.C.1977) (tax return information is never again confidential once disclosed by use in a public trial). These courts reason that trial proceedings are public events and "[o]nce tax return information enters the public domain, the taxpayer no longer has any privacy interests in that information." *Thomas,* 671 F.Supp. at 16. Thus if a taxpayer's

---

1. The taxpayers also contend that the press releases here contained return information that was not disclosed in the judicial proceedings. *See e.g., Husby v. United States,* 672 F.Supp. 442, 444 (N.D.Cal.1987) (limiting the right of subsequent disclosure to only that information actually disclosed in the judicial proceedings). The

district courts here found that the information disclosed in the press releases were restatements of the allegations in the indictments or of the events that took place in open court at trial, plea hearing, or sentencing. Our review of the record convinces us that the courts' findings on this point are not clearly erroneous.

return information is lawfully disclosed in a judicial proceeding pursuant to section 6103(h)(4)(C), the information is no longer confidential and may be disclosed again without regard to section 6103. *See United Energy Corp. v. United States*, 622 F.Supp. 43, 46 (N.D.Cal.1985) (U.S. Attorney's disclosure to newspaper reporter of information disclosed in court proceeding did not violate section 6103).

We have observed that section 6103 does not create a general prohibition against public disclosure of tax information. *Stokwitz*, 831 F.2d at 896; *but see Wiemerslage v. United States*, 838 F.2d 899, 902 (7th Cir.1988) (describing section 6103 as a "general prohibition against the disclosure of tax return information"). The taxpayers admit that anyone is free to obtain return information from public court records. They acknowledge that court records are public domain and that "[t]hose who see and hear what transpired can report it with impunity." *Craig v. Harney*, 331 U.S. 367, 374, 67 S.Ct. 1249, 1254, 91 L.Ed. 1546 (1947). Nevertheless, they insist that for a government employee to disclose any return information, confidential or not, there must exist an applicable exception to section 6103(a).

Only a strict, technical reading of the statute supports the taxpayers' position. *See Johnson*, 640 F.Supp. at 1132. While generally our duty is to give effect to the literal language of a statute, we are not obligated to do so when reliance on that language would defeat the purposes of the statute. *Brothers v. First Leasing*, 724 F.2d 789, 793 (9th Cir.), *cert. denied*, 469 U.S. 832, 105 S.Ct. 121, 83 L.Ed.2d 63 (1984). We believe that Congress sought to prohibit only the disclosure of confidential tax return information. Once tax return information is made a part of the public domain, the taxpayer may no longer claim a right of privacy in that information.

*See Thomas*, 671 F.Supp. at 16; *United Energy*, 622 F.Supp. at 46. We agree when once information is lawfully disclosed in court proceedings, "§ 6103(a)'s directive to keep return information confidential is moot." *Figur*, 662 F.Supp. at 517. Therefore we hold that once return information is lawfully disclosed in a judicial forum, its subsequent disclosure by press release does not violate the Act.

AFFIRMED.[2]

---

**2.** We may affirm *Lampert* on this ground even though Judge Peckham did not reach the issue. *See United States v. Washington*, 641 F.2d 1368, 1371 (9th Cir.1981) (appellate court may affirm on any basis supported by the record), *cert. denied*, 454 U.S. 1143, 102 S.Ct. 1001, 71 L.Ed.2d 294 (1982); *see also Rueckert v. I.R.S.*, 775 F.2d

208, 212 (7th Cir.1985) (affirming the district court on alternative ground that disclosure at issue did not violate section 6103).